**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-3555

———————

Joe Chronister,                                        *
                                                       *
           Appellee,                                   *
                                                       *  Appeal   from   the   United   States
District                                                  
       v.                                              *  Court for the Eastern District of
Missouri.
                                                       *
Bryco Arms, doing business as Jennings                                           *
Firearms,                                              *
                                                       *
           Appellant.                                  *

———————

Submitted: May 22, 1997
Filed: September 11, 1997

———————

Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN,
      Circuit Judge.

———————

BEAM, Circuit Judge.

     Joe Chronister brought this products liability action against Bryco
Arms after a Bryco handgun misfired with an open chamber, leaving
Chronister with ear damage. A jury found for Chronister on claims based
upon strict liability and negligence. Bryco appeals, and we affirm.

## I. BACKGROUND

We summarize the facts in the light most favorable to the verdict. United Paperworkers Int'l Union v. Champion Int'l Corp., 81 F.3d 798, 800 (8th Cir. 1996). In 1994, Chronister purchased a "Bryco 59" 9mm handgun for his girlfriend to use as a personal protection weapon. About two weeks later, Chronister took the gun to his brother-in-law's home and shot at a target set up behind the house. This was the first time the gun had been fired. Several people took turns shooting the weapon, using cartridges manufactured by Federal-Hoffman, Inc., d/b/a Federal Cartridge Company (Federal-Hoffman). The gun misfed and jammed several times. On the last occasion, when Chronister attempted to shoot again, the cartridge exploded while the chamber was open. Chronister testified that he staggered back and fell, got some soot and shrapnel in his face, was temporarily blinded, and lost his hearing in his right ear for several hours and in his left ear for a shorter period. Chronister was not wearing any sort of hearing protection at the time, even though both the gun's package and the ammunition box warned that firearms should not be used without hearing protection.

Chronister was later examined by an ear-nose-throat physician, Dr. Edward Becka, and an audiologist, Johnny Malone. Becka and Malone testified that Chronister has mild hearing loss in both ears, but that his hearing is still within a normal range. However, Chronister also now suffers from two disorders: (1) tinnitus, or constant ringing in his ears; and (2) hyperacusis (also called recruitment), which is a painful hypersensitivy to noise. Becka and Sam Hopmeier, a director of the American Tinnitus Association, testified that both tinnitus and hyperacusis can be caused by sudden exposure to high noise, and that the gun explosion in all likelihood caused Chronister's conditions. Both of these conditions are probably permanent.

Chronister brought suit against Bryco, Federal-Hoffman, and Wal-Mart Stores, Inc. (from whom he purchased the gun). He proceeded to trial against Bryco, having voluntarily dismissed the other defendants. As indicated, Chronister sought relief under

theories of strict liability and negligence, alleging that the Bryco 59 was defectively designed and that Bryco failed to warn of the risk that the gun might misfire with the chamber open. Chronister argued that the Bryco 59 was defective because, as designed, it has a very high frequency of misfeeds. Furthermore, the gun's firing pin does double-duty as the "ejector," that is, the part of the gun that kicks out a spent cartridge after it has been fired. Chronister argued that his gun exploded when a live cartridge jammed while feeding into the open chamber and while the firing pin was still exposed.

To prove this, Chronister relied upon tests conducted by Federal-Hoffman while it was still a defendant. Federal-Hoffman employees and an ammunition expert, Gerald Gourley, tested five Bryco 59s that were purchased at different locations across the country. They test-fired these pistols, as well as Chronister's gun, approximately 500 times. Gourley, whom Chronister later retained as an expert witness, testified that every one of the test guns misfed between twenty and fifty percent of the time. Cartridges would feed into the chamber part-way, pointed straight up, sticking down, or would come partially out of the chamber. Sometimes after the gun was fired, it would eject a live cartridge along with the spent cartridge. On at least three occasions, a gun misfed and jammed while the firing pin was exposed to the cartridge with the chamber open. The jury viewed a videotape of these tests. Although no cartridge ever exploded during the tests, Gourley testified that Chronister's accident was in all likelihood the result of such a misfeed, with the extra misfortune that the firing pin happened to strike the primer, rather than some other part of the cartridge.

Gourley also testified that he and Federal-Hoffman employees, including a metallurgist, examined the cartridge that misfired on Chronister, and that it was apparently a normal cartridge. According to Gourley, the exploding cartridge showed a strike from the firing pin off to the side of the primer and coming up at an angle, which was consistent with Chronister's explanation of the explosion. Furthermore, the

-3-

cartridge that was fired immediately before the exploding one showed a similar off-center and angled impression from the firing pin.

The district court submitted to the jury separate verdict forms for the strict liability and negligence claims. For both claims, the jury was allowed to return a verdict for Chronister on the basis of design defect or failure to warn, but was not required to indicate the theory or theories upon which it predicated liability. The jury found for Chronister on both claims, apportioning to Chronister, however, five percent of fault on the strict liability claim and twenty-five percent on the negligence claim. The jury awarded (subject to reduction for Chronister's fault) $315,000 for the strict liability claim and $20,000 for the negligence claim. The district court[1] denied Bryco's motions for judgment as a matter of law (JAML) and for a new trial. Bryco appeals, alleging that the district court erred in : (1) denying its motion for judgment as a matter of law on Chronister's strict liability claim; (2) instructing the jury on strict liability failure to warn; (3) not allowing the jury to apportion fault to Federal-Hoffman; and (4) denying its motion for a new trial based on alleged evidentiary and trial errors. While this appeal was pending, the district court granted, pursuant to 28 U.S.C. § 1963, Chronister's motion to register the judgment in other jurisdictions. Bryco then appealed from that order, and we consolidated the two appeals. Bryco has now dismissed this later appeal.

## II.  DISCUSSION

### A.  Strict Liability/JAML

Under Rule 50 of the Federal Rules of Civil Procedure, a party is entitled to judgment as a matter of law "when all of the evidence points one way and is

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" Keenan v. Computer Assoc. Int'l, Inc., 13 F.3d 1266, 1269 (8th Cir. 1994) (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)).  In reviewing a JAML motion that seeks to set aside a jury verdict, "we view the 'evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility.'" Id. at 1268-69 (quoting Pence, 961 F.2d at 779).

Under Missouri law, a plaintiff in a strict product liability case must establish that "the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use" and that "the product was used in a manner reasonably anticipated." Fahy v. Dresser Indus., Inc., 740 S.W.2d 635, 637 (Mo. 1987) (en banc).[2]  Bryco argues that it cannot be liable for Chronister's ear injuries because it could not reasonably foresee that someone would use its handguns without wearing hearing protection.  Further, Bryco maintains, use of a product that contradicts that product's instructions or warnings is not a "reasonably anticipated use."

We disagree.  It is basic products liability law that a manufacturer cannot escape strict liability for a defective product that has been misused by the plaintiff, if that misuse is reasonably foreseeable.  See 63A Am. Jur. 2d Products Liability § 967 (1997) (Most "jurisdictions now acknowledge that in applying strict liability in tort for design defects, manufacturers cannot escape liability on grounds of misuse or abnormal use if the actual use proximate to the injury was objectively foreseeable.").  This is the rule in Missouri.  Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 381 (Mo.

---

[2]The plaintiff must also establish that "defendant sold the product in the course of its business" and that "plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." Fahy, 740 S.W.2d at 637-38.  These factors are not at issue in this appeal.

1986) (en banc) ("The concept of reasonably anticipated use . . . includes misuse and abnormal use which is objectively foreseeable.").

Chronister's expert witness, Gourley, and Bryco's plant manager, Norman Anderson (who also designed the Bryco 59), both testified that they knew that some people used weapons without hearing protection. Bryco argues, however, that the issue is more narrow: whether it is foreseeable that someone might go *target shooting* without hearing protection. Even if this is the proper inquiry, a reasonable jury could easily find that Bryco could have foreseen that some target shooters might choose not to wear hearing protection. Bryco was free to argue that Chronister's failure to wear hearing protection constituted fault on his part, and in fact the jury did allocate some fault to Chronister. Bryco was not entitled to judgment as a matter of law on this issue.

## B. Failure to Warn Instruction

Bryco also contends that Chronister's strict liability failure to warn theory should not have been submitted to the jury.[3] Bryco makes two arguments: (1) that it issued an adequate warning of the danger, and (2) that its product did not cause Chronister's injury because no warning would have altered his behavior.[4]

---

[3]Although the jury was also charged on negligent failure to warn, Bryco only appeals the strict liability claim.

[4]In Missouri, there are five elements to a strict liability failure to warn case:

(1) defendant sold the product in question in the course of defendant's business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) plaintiff was damaged as a direct result of the product being sold without an adequate warning.

Tune v. Synergy Gas Corp., 883 S.W.2d 10, 13 (Mo. 1994) (en banc). To the extent that Bryco extends to the failure to warn theory its argument that Chronister's use of the gun was not "reasonably anticipated," we reject that argument for the reasons already discussed.

As to the first issue, the box for the Bryco 59 carried the following warning: "Do not use this pistol until you have read the enclosed instructions and have been instructed in safe gun handling by a competent firearms instructor. All guns can be dangerous if improperly handled." An insert in the box stated:

> We strongly advise that you familiarize yourself with all mechanisms of this, or any gun, before putting ammunition into it. Do not carry with cartridge in chamber. Wear shooting glasses and hearing protection. Always point pistol in a safe direction. Never place your finger on the trigger unless you are ready to shoot the pistol. Always check chamber after removing magazine for cartridge in barrel. Do not dry fire, shoot pistol with empty chamber.

Chronister argues that these warnings were inadequate because they failed to warn that the Bryco 59 was prone to misfeeding, which could result in a cartridge discharging with the chamber open. He claims that the general warning to use hearing protection was insufficient because it failed to warn him of the specific risk that the weapon created. That is, the warning only clearly encompassed routine discharge of the weapon, not a sudden, catastrophic explosion of the cartridge in the open chamber.

At first glance, Chronister's failure to warn theory appears to merely bootstrap his defective design theory. However, Missouri law allows a plaintiff to submit multiple theories of product liability, so long as the plaintiff has established a submissible case under each theory. Magnuson v. Kelsey-Hayes Co., 844 S.W.2d 448, 456 (Mo. Ct. App. 1992). Furthermore, a failure to warn theory may be premised on a defendant's failure to warn of an unreasonably dangerous design characteristic of the product. Johnson v. Hyster Co., 777 S.W.2d 281, 284-85 (Mo. Ct. App. 1989). In

Johnson, for example, the plaintiff was injured when he was struck by an asphalt roller that lurched forward while idling unattended. The plaintiff brought both strict liability and negligence claims, alleging defective product design and negligent failure to warn. The plaintiff's design defect theory was that the manufacturer failed "to equip the roller with a device which would prevent the roller from moving unless the operator was sitting in his seat." Id. at 283. The failure to warn theory was that the manufacturer failed "to warn . . . that the roller would move even if the operator was not seated at the controls." Id. The Missouri Court of Appeals held it was not error to instruct the jury on both theories, reasoning that "there is no inconsistency between product defect and . . . failure to warn. In fact, the [negligent failure to warn] theory depends upon the product defect in this case, because the negligence is alleged to be the failure to warn of the fact the roller could move without the operator being present to control its movement." Id. at 284. See also Spuhl v. Shiley, Inc., 795 S.W.2d 573, 580 (Mo. Ct. App. 1990) (strict liability failure to warn requires that product be in a defective condition).

In light of this, we find no error in allowing the jury to consider whether Bryco's cautionary language adequately warned of the particular risks of using its product. Bryco argues, however, that Chronister cannot show that the lack of a specific warning caused his injury because his disregard of the general warning to use hearing protection shows that no warning would have changed his behavior. See Tune v. Synergy Gas Corp., 883 S.W.2d 10, 14 (Mo. 1994) (en banc) (to establish causation, a "plaintiff must show that a warning would have altered the behavior of those involved in the accident."). A reasonable jury, however, could have concluded otherwise. Chronister testified that you need to use hearing protection when you know of an increased risk of loud discharge, such as when firing a higher-caliber [.44 magnum] weapon. He testified that he did not know of the risk that the Bryco 59 could misfire on an open chamber while he held it, producing an explosion greater than the routine discharge. The jury could reasonably have concluded that, had an adequate warning of the Bryco

59's particular risks been present, Chronister would have altered his behavior. The district court did not err in submitting the failure to warn theory to the jury.

## C. Allocation of Fault to Non-Party

The district court rejected Bryco's proposed instruction and verdict forms allowing the jury to allocate fault to Federal-Hoffman. The court concluded that Missouri law does not allow allocation of fault to an entity that is not a party to the lawsuit, and that had Bryco wished to allocate fault to Federal-Hoffman, Bryco should have impleaded it.

Whether a non-party to a lawsuit can be apportioned a degree of fault is a controversial question that courts and legislatures have resolved in a number of ways.[5] However, neither the Missouri legislature nor courts have directly addressed this issue.[6]

---

[5]One commentator notes that while the trend is to allow the jury to apportion fault to a non-party, a number of states do not allow this. R. Sean Mcevoy, Pamela B. v. Hayden: Apportioning Liability Based Upon One's Fault Rather than One's Pocketbook, 18 Am. J. Trial Advoc. 701, 713-14 nn.100 & 101 (1995); see also Reginald R. White, III, Comparative Responsibility Sometimes: The Louisiana Approach to Comparative Apportionment and Intentional Torts, 70 Tul. L. Rev. 1501, 1536 n.167 (1996) (noting that at least five states do not allow allocation of fault to nonparties). Section two of the Uniform Comparative Fault Act prohibits apportionment of fault to nonparties, 12 U.L.A. 135-136 (1996), while the Restatement (Second) of Torts, section 433A, allows nonparty apportionment. See generally Gerald W. Boston, Apportionment of Harm in Tort Law: A Proposed Restatement, 21 U. Dayton L. Rev. 267, 375 (1996) (discussing Restatement (Second) of Torts and proposed Third Restatement).

[6]The state's products liability statute allows a defendant "to plead and prove the fault of the plaintiff as an affirmative defense," with any damages offset by the plaintiff's degree of fault, but says nothing about proving fault of other entities. Mo. Rev. Stat. § 537.765 (1996). The comments to the Missouri Approved Jury Instruction for comparative fault state that "apportionment of fault among parties not sued by plaintiff depends upon substantive issues which may not yet be resolved. The Committee takes no position on unresolved substantive issues." MAI 37.07, note 3 (1996)

In this case, however, we need not speculate on how Missouri courts would resolve this question. No instruction on Federal-Hoffman's fault was warranted because there was no evidence at trial that the cartridge was defective or in any way partly responsible for the accident.

Bryco points to the testimony of its expert, J.B. Wood, who examined the cartridge for the first time on the stand with a jeweler's loupe. He testified that the markings on the cartridge indicated to him that the cartridge was properly chambered when it discharged, disputing Chronister's theory of the accident. In Woods's opinion, the gun was not defective and the only explanation for the misfiring was that the cartridge was faulty. However, Wood never identified any defect in the cartridge, nor did he testify that his examination revealed anything implicating the cartridge. Wood merely testified that the gun was not at fault, and stated in conclusory fashion that, therefore, the cartridge must have been the problem. This is not sufficient evidence to submit to a jury a claim against Federal-Hoffman. The evidence at trial did not support instructing the jury on this defense theory, even if Missouri law would allow such a charge. We therefore affirm. <u>Cooksey v. Delo</u>, 94 F.3d 1214, 1218 (8th Cir. 1996) (appellate court may affirm on any basis supported by the record).

### D. Other Issues

Bryco also appeals based on certain evidentiary rulings by the district court and the district court's denial of its motion for a mistrial. We have examined these issues and find them to be without merit.

## III. CONCLUSION

-10-

For the reasons discussed above, we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-