# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 06-2760

————————

Vernon E. Christensen,⁣                    *

                                  *

         Appellee,               *

                                  *      Appeal from the United States

v.                          *      District Court for the

                                  *      Southern District of Iowa.

Titan Distribution, Inc.,          *

                                  *

         Appellant.             *

————————

Submitted: January 11, 2007
Filed: April 10, 2007

————————

Before COLLOTON, BRIGHT and GRUENDER, Circuit Judges.

————————

GRUENDER, Circuit Judge.

A jury found that Titan Distribution, Incorporated ("Titan") discriminated against Vernon Christensen based on Christensen's disability and age when it refused to hire him. The jury awarded back pay, punitive damages and emotional distress damages. The district court[1] then denied Titan's post-trial motions for judgment as a matter of law and, in the alternative, a new trial, reduced the jury's award of back

---

[1]The Honorable Ronald E. Longstaff, then Chief Judge, United States District Court for the Southern District of Iowa.

pay and punitive damages and awarded Christensen liquidated damages, front pay and attorneys' fees and costs. Titan appeals. For the reasons discussed below, we affirm.

## I.    BACKGROUND

Titan hired Quintak, Incorporated to operate its warehouse and distribution center. Christensen worked for Quintak as a third-shift warehouse supervisor at Titan. In June 2002, Christensen was 58-1/2 years old and went on short-term disability leave to have knee replacement surgery. Craig Warren, Christensen's manager and a Quintak employee who had daily contact with Titan management, considered Christensen his most qualified and experienced supervisor and told Christensen that he would have his job when he returned from the disability leave. When Christensen went on leave, Coy Elswick, a 25-year-old lead man supervised by Christensen, performed Christensen's duties.

In July 2002, while Christensen was still on disability leave, Titan decided to cut costs by terminating Quintak and hiring its own employees to perform the duties the Quintak employees previously performed. William Campbell, president of Titan, announced that Titan would be hiring some of Quintak's employees and met with Warren to inform him of the reorganization. All Quintak employees who wanted to work at Titan were required to submit applications, interview for the desired positions and undergo qualifying physicals. Nadis Barucic and Cheryl Luthin oversaw the application process. Campbell continued to meet with Warren, who assumed the position of warehouse manager at Titan, during the transition stage.

Warren and Elswick informed Christensen of this development. Warren told Christensen that while everyone was required to fill out an application, Christensen was on his list of people who were needed to run the operation. Christensen submitted an application while he was still on disability leave and kept in contact with Warren. He told Warren that he applied for the third-shift supervisor position and that his

doctor would not release him to work until August 28, 2002. Warren assured Christensen that he would have his job as third-shift supervisor whenever the doctor allowed him to return to work.

At the beginning of August, Christensen contacted Warren to check on the status of his application. Warren first told Christensen to call Barucic, who told Christensen that he was not conducting any more interviews and that Christensen needed to have Warren schedule him for an interview with Luthin. Christensen contacted Warren two additional times before Warren contacted Luthin. After Warren contacted Luthin, he received an e-mail from Luthin stating that Titan would not be hiring Christensen. Christensen asked Luthin about this decision on September 4, 2002, and Luthin "promptly told [him] that Titan Distribution was not hiring." Titan did not interview or hire Christensen, and no one at Titan provided a reason to Christensen for this decision.

Christensen then filed a charge of disability and age discrimination with the Iowa Civil Rights Commission ("Commission"). When asked by the Commission for its reason for not hiring Christensen, Titan responded that it did not hire all applicants. Titan did not immediately fill Christensen's third-shift supervisor position, but it did hire Elswick to fill the lead man position. Elswick testified that his job duties as a Titan employee were the same as those he performed as a Quintak employee while filling in for Christensen when he was on disability leave. One year after Titan hired Elswick, it promoted him to the third-shift supervisor position. Elswick testified that Christensen was more experienced and more qualified than Elswick for the warehouse supervisor position and that both men had the same physical abilities.

When Christensen was not hired by Titan, he spent the next ten months searching for a job similar to his Quintak supervisor position. He utilized career service counselors and sent resumes to potential employers. He received job interviews but no offers. In July 2003, Christensen's brother-in-law hired him to

handle purchasing and sales at a lumberyard he managed. Christensen accepted this job even though it had less responsibility and lower compensation than his prior supervisor position.

Christensen filed suit against Titan for disability and age discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., respectively, and the parallel provisions of the Iowa Civil Rights Act, Iowa Code § 216 et seq. Titan filed a motion for summary judgment, claiming that it did not hire Christensen because it decided to eliminate the third-shift supervisor position for economic reasons. The district court denied Titan's motion for summary judgment.

At trial, Titan employees provided conflicting evidence as to who made the decision not to hire Christensen. Campbell testified that he decided to eliminate the third-shift supervisor position by July 2002, but he also claimed that Warren made the decision not to hire Christensen. Warren, however, testified that no one told him that the third-shift supervisor position had been eliminated. Warren claimed that he wanted to hire Christensen and did not know that Titan did not intend to hire him until receiving an e-mail from Luthin on August 16, 2002. Luthin and Barucic, however, both testified that they did not make the decision not to hire Christensen.

The jury also heard testimony concerning Christensen's physical capabilities. During August 2002, Christensen's doctor told him that he had the following permanent restrictions: no prolonged walking, frequent bending, or stooping with the knee, no jumping from heights of over one foot, and no standing more than two hours at a time. A vocational expert testified that Christensen's restrictions prevented him from performing positions that accounted for 50 percent of the job market but that Christensen could perform his job as supervisor at Quintak and the same job he applied for with Titan.

Christensen and his wife testified about the emotional distress he experienced after Titan refused to hire him. He was upset and distraught over Titan's decision and continued to be withdrawn and feel stress during his long job search. He also cried and was upset because he was not the breadwinner of the family. He continued to be withdrawn even after he began working at the lumberyard because this job did not provide the same fulfillment as his third-shift supervisor position.

The jury returned a verdict in favor of Christensen on both the disability and age discrimination claims. The jury was instructed to determine both whether Christensen had a physical impairment and whether Christensen was regarded as having an impairment. The instructions, however, did not clearly inform the jury that these two definitions, "actually disabled" and "regarded as disabled," were mutually exclusive and that a finding of disability under both definitions would be inconsistent.[2] Therefore, on a special verdict form, the jury found both that Christensen was actually disabled and that Titan regarded him as disabled. The jury also found that Titan willfully violated the ADEA. Based on these findings, the jury awarded Christensen $130,000 in back pay, $195,000 in punitive damages and $65,000 in emotional distress damages. Titan moved for judgment as a matter of law or, in the alternative, a new trial. Christensen requested liquidated damages for the ADEA claim, front pay and attorneys' fees and costs.

In response to these motions, the district court denied Titan's requests for judgment as a matter of law or a new trial, holding that the jury's finding that Titan regarded Christensen as disabled was supported by substantial evidence. The district court addressed the jury's finding that Titan regarded Christensen as disabled first because it believed that the evidence supporting the "regarded as disabled" finding

_____

[2]For ADA purposes, the definition of "regarded as disabled" assumes that the individual is not actually disabled. *Wenzel v. Mo.-Am. Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005). Titan did not object to the jury instructions or the special verdict form before or after the jury returned its verdict.

was stronger than that for the "actually disabled" finding. Once the district court found that the evidence was sufficient to support the "regarded as" finding, it concluded that it was unnecessary to address the jury's finding of Christensen's actual disability and vacated that finding.

Due to its decision to vacate the actual disability finding and assuming that the jury's punitive damages award applied equally to both findings, the district court reduced the punitive damages award by half to $97,500. The district court also considered the jury's back pay award and reduced it to $78,209 because the jury considered the possibility of Christensen receiving overtime pay which was not supported by the evidence. The district court then found that there was sufficient evidence supporting the jury's emotional distress damages award. Next, the district court awarded Christensen $78,209 in liquidated damages, finding the evidence sufficient to support the jury's finding that Titan's violation of the ADEA was willful. Finally, the district court awarded Christensen $47,525 in front pay and $54,875.80 in attorneys' fees and costs.

## II. DISCUSSION

On appeal, Titan argues that it is entitled to judgment as a matter of law or, in the alternative, a new trial because the evidence was insufficient to support either the disability discrimination verdict or the age discrimination verdict as well as the awards for punitive, emotional distress and liquidated damages. Titan also argues that the district court abused its discretion in awarding Christensen front pay.

### A.      Sufficiency of the Evidence

#### 1.      Judgment as a Matter of Law

We review a district court's denial of a motion for judgment as a matter of law de novo. *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 988 (8th Cir. 2007). Judgment as a matter of law is granted only if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Id.* (quotation omitted). We apply the same standards as the district court, giving the nonmoving party all reasonable inferences and viewing the facts in the light most favorable to the nonmoving party. *Id.* If "conflicting inferences reasonably can be drawn from evidence," the jury is in the best position to determine which inference is correct. *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006).

#### a.      Disability Discrimination

In order to make a prima facie case under the ADA, a plaintiff must establish "(1) that [he] has a disability within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment action due to a disability." *Chalfant*, 475 F.3d at 988 (internal quotations omitted).[3] Titan argues only that there was insufficient evidence to prove the first element. With respect to this first element, "[t]he ADA defines a disability as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such

---

[3]The same analysis applies for disability discrimination claims brought under Iowa law. *Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n.3 (8th Cir. 1999). Therefore, it is unnecessary to discuss separately the parallel claim under the Iowa Civil Rights Act.

an impairment.'" *Webner v. Titan Distribution, Inc.*, 267 F.3d 828, 833 (8th Cir. 2001) (quoting 42 U.S.C. § 12102(2)).

An employer regards an employee as disabled if it "mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or [it] mistakenly believes that an *actual* impairment substantially limits one or more major life activity." *Chalfant*, 475 F.3d at 988-89 (quoting *Wenzel*, 404 F.3d at 1041). The parties do not dispute that working is a major life activity. *Cf. Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002). An employee is substantially limited from working when he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Chalfant*, 475 F.3d at 989 (quotation omitted). If an employer mistakenly believes that an employee is unable to perform a class of jobs or a broad range of jobs, then the employer regards the employee as disabled. *See id.* However, if an employer only mistakenly believes the employee is unable to perform a single job, then the employer does not regard the employee as disabled. *Id.*

Titan argues that the evidence was insufficient for the jury to find that it regarded Christensen as unable to perform a class of jobs or a broad range of jobs. The district court relied on Warren's testimony that Christensen, as a third-shift supervisor, was required to perform the duties of all of the workers who reported to him and Christensen's testimony that he occasionally assumed the duties of his absent subordinates. The district court held that the jury could infer from this testimony that Titan did not interview or hire Christensen for the third-shift supervisor position because Titan believed he could not perform the supervisor job or the duties of all of the positions reporting to the supervisor in the organizational chart. As a result, the district court concluded that a jury could find that Titan believed Christensen was unable to perform a broad range of jobs.

We do not agree that such an inference would be appropriate because it does not logically follow from Titan's refusal to hire Christensen that Titan believed Christensen was unable to perform *all* of the jobs of all employees reporting to the supervisor position. Because the supervisor is required to perform the jobs of all of his subordinates, Titan's regarding Christensen as being unable to perform any one of those jobs would disqualify him from the supervisor position. At most, a reasonable jury could only infer that Titan did not believe Christensen could perform the single most physically demanding job reporting to the supervisor. Therefore, the evidence on which the district court relied does not support the conclusion that Titan believed Christensen was prevented from performing a class of jobs or a broad range of jobs in various classes.

While other evidence may sufficiently support the jury's finding that Titan regarded Christensen as disabled, we need not make that determination because we find that Christensen's "actually disabled" claim is more straightforward than his "regarded as disabled" claim and that the evidence was sufficient for a reasonable jury to find that Christensen was actually disabled. *See Chronister v. Bryco Arms*, 125 F.3d 624, 639 (8th Cir. 1997) (stating that this court may affirm a district court's decision to deny a motion for judgment as a matter of law "on any basis supported by the record").

A person has an actual disability under the ADA if he has "(1) a physical or mental impairment that (2) substantially limits one or more major life activities of the individual." *Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 843 (8th Cir. 2005) (quoting 42 U.S.C. § 12102(2)) (internal quotations omitted). A person is substantially limited from the major life activity of working when his impairment "significantly restrict[s] the individual's ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Webner*, 267 F.3d at 834 (citing 29 C.F.R. § 1630.2(j)(3)(i)) (internal quotations omitted).

In *Webner*, we held that the evidence was sufficient for the jury to find that Webner had a physical impairment that substantially limited his life activity of working based on the following evidence: (1) Webner's back injury limited his ability to walk, stand for long periods of time and twist and bend at the waist; (2) Webner's back caused an impairment rating of 18 percent of his body as a whole; (3) Webner was required to return to work incrementally subject to restrictions and physical therapy; and (4) Webner was prevented from working in jobs that had heavy and very heavy industrial classifications (classifications that required a lifting ability greater than Webner's restricted lifting ability of 50 pounds). *Id.* In the instant case, Christensen presented similar evidence: (1) Christensen could not engage in prolonged walking, standing more than two hours at a time, frequent bending or stooping, or jumping from heights over one foot; (2) Christensen's knee injury caused a 35 percent impairment rating of his leg and a 15 percent impairment of his body as a whole; (3) Christensen was not permitted to return to work until August 28, 2002, and had to abide by his doctor's restrictions concerning walking and bending his knee; and (4) Christensen could only perform 50 percent of the jobs in the job market and was prevented from performing jobs of "medium and above strength demands" that required lifting 50 pounds or more. Given the similarity of these facts to the *Webner* facts, we find that the evidence was sufficient to support the jury's finding that Christensen was actually disabled.

Titan next argues that it offered a legitimate, nondiscriminatory reason for not hiring Christensen. In discrimination cases, once an employer offers a legitimate reason for the adverse employment action, the plaintiff must present evidence that the reason was pretextual. *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir. 1997). If a jury doubts the employer's offered reasons, it can base a finding of intentional discrimination on a combination of the prima facie case and its doubt of the employer's reason, especially if the doubt is "accompanied by a suspicion of mendacity." *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1058 (8th Cir. 2002) (quotation omitted).

Titan presented evidence to the jury that it did not hire Christensen because it decided to eliminate the third-shift supervisor position for economic reasons. The jury, though, also heard evidence that permitted it to reject Titan's proffered explanation. First, Titan's actions at the time it made the decision not to hire Christensen do not support a finding that it had made the economic decision to eliminate the position altogether. Instead, Warren assured Christensen that he would have the position. Despite being involved in the decision-making process with Campbell, Warren testified that he had no knowledge of any plan to eliminate the third-shift supervisor position. Warren only inferred that the supervisor position was eliminated when he received Luthin's August 16, 2002 e-mail informing him Titan was not going to hire Christensen. In addition, when asked by the Commission for its reason for not hiring Christensen, Titan made no mention of having decided to eliminate the third-shift supervisor position for economic reasons. Although Campbell claimed that he made the decision to eliminate the third-shift supervisor position by July 2002, the jury could reasonably reject this testimony based on Warren's testimony that he was unaware of any decision to eliminate the third-shift supervisor position until he inferred it from the August 16, 2002 e-mail. Second, none of the Titan decision-makers who testified at trial were willing to accept responsibility for making the decision not to hire Christensen. Campbell testified that Warren made the decision not to hire Christensen; Warren testified that he did not make the decision and was told by Luthin that Christensen would not be hired; and Luthin and Barucic testified that they did not make the decision not to hire Christensen. Third, Elswick testified that he continued to perform Christensen's previous duties once Titan took over for Quintak. One year after he was hired by Titan, Elswick was given the title of third-shift supervisor. This evidence is sufficient for a reasonable jury to infer that Titan still needed someone to perform the supervisor duties and that Titan intended to replace Christensen with Elswick and simply waited a year to give Elswick the actual title of the job he was already performing. Based on all of this evidence, we conclude that a reasonable jury could find that Titan's proffered reason was pretextual.

Viewing the evidence in the light most favorable to the verdict, there is sufficient evidence for the jury to find that Christensen was actually disabled, to reject Titan's proffered reason for not hiring Christensen and to conclude that Titan discriminated against Christensen based on his disability.

### b.    Age Discrimination

"The ADEA prohibits a covered employer from failing or refusing to hire an individual who is at least forty years old because of the individual's age." *Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 852 (8th Cir. 2005) (citing 29 U.S.C. §§ 623(a)(1), 631(a)).  In a failure-to-hire case, the prima facie case of age discrimination consists of four elements: "(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position." *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir. 2003).[4]

While Titan does not specifically argue that there was insufficient evidence to support a prima facie case of age discrimination, Christensen clearly established these four elements.  Christensen, at 58-1/2 years old, was in the protected age group. Christensen also produced evidence that he was qualified for the position that Elswick ultimately held at Titan, that he was not hired by Titan, and that instead Titan hired 25-year-old Elswick.[5]   Titan again attempted to overcome this inference of discrimination with its legitimate, nondiscriminatory explanation of not hiring

---

[4]The same analysis applies for age discrimination claims brought under Iowa law. *Montgomery*, 169 F.3d at 558 n.3.  Therefore, it is unnecessary to discuss separately the parallel claim under the Iowa Civil Rights Act.

[5]While Elswick was not given the title of "supervisor" until a year after Titan took over Quintak's operations, Elswick testified that he immediately performed the same duties at Titan as he was performing at Quintak as Christensen's replacement when Christensen went on disability leave.

Christensen because it had decided to eliminate the third-shift supervisor position for economic reasons. However, the same evidence previously discussed with respect to the disability discrimination claim also supports Christensen's pretext argument with respect to his age discrimination claim. Accordingly, we conclude that a reasonable jury could have found that Titan's proffered explanation for not hiring Christensen was pretextual and that Titan discriminated against Christensen based on his age.[6]

### c.    Punitive Damages

A plaintiff is entitled to punitive damages in connection with ADA claims where the "employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Canny*, 439 F.3d at 903 (internal quotations omitted). An employer acts with "malice or with reckless indifference" if it has "knowledge that it may be acting in violation of federal law." *Id.* If the employer "is unaware federal law prohibits the relevant conduct," then it is not liable for punitive damages. *Id.*

Titan argues that the evidence was insufficient to support the jury's punitive damages award. Viewing the evidence in the light most favorable to the verdict, we agree with the district court's finding that there was sufficient evidence to support the punitive damages award. Titan clearly was aware that federal law prohibits disability

---

[6]Titan also argues that Christensen failed to present statistical evidence establishing that Titan favored younger employees in its hiring decisions. This argument is flawed because Christensen is not required to produce statistical evidence demonstrating Titan's practice of discriminating based on age. As the district court noted, Titan's reliance on *Stidham v. Minn. Min. & Mfg., Inc.*, 399 F.3d 935 (8th Cir. 2005), is misplaced because *Stidham* was a reduction-in-force case. This is a failure-to-hire case. In a failure-to-hire case, an employee can rely on circumstantial evidence of discrimination and need not present statistical evidence. *See Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1412 (8th Cir. 1997).

-13-

discrimination because Campbell testified that he knew federal law prohibited disability discrimination. From this knowledge, as well as the refusal of Titan decision-makers to associate themselves with the decision not to hire Christensen, a reasonable jury could conclude that Titan intentionally discriminated against Christensen based on his disability and it had "knowledge that it may [have been] acting in violation of federal law." *Id.*; *see Chalfant*, 475 F.3d at 992. Therefore, the evidence was sufficient to support the jury's punitive damages award.

### d. Emotional Distress Damages

A plaintiff is entitled to damages for emotional distress when there is evidence of actual emotional distress caused by an employer's discriminatory acts in violation of the ADA. *Webner*, 267 F.3d at 836. Emotional distress damages "must be supported by competent evidence of genuine injury." *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1196 (8th Cir. 2001) (quotation omitted). A plaintiff's own testimony can be sufficient for a finding of emotional distress, and medical evidence is not necessary. *Webner*, 267 F.3d at 836. The plaintiff's testimony must "offer specific facts as to the nature of his claimed emotional distress and the causal connection to [the employer's] alleged violations." *Id.* "Furthermore, [a]wards for pain and suffering are highly subjective and the assessment of damages is within the sound discretion of the jury, especially when the jury must determine how to compensate an individual for an injury not easily calculable in economic terms." *Id.* (internal quotation omitted).

Titan argues that the testimony of Christensen and his wife was insufficient to sustain the jury's emotional distress damages award of $65,000. However, Christensen's testimony is similar to the testimony that was found to be sufficient to support a jury's award of emotional distress damages in *Webner*. Webner testified that (1) he was emotionally devastated after losing his job; (2) he "felt 'empty,' like he lost his best friend and that there was 'a hole in his chest'"; (3) he was scared that

-14-

he would not be able to pay his bills; and (4) he was frustrated that he could not find a job for six months. *Id.* Christensen and his wife testified that (1) he experienced significant stress after not being hired by Titan; (2) he was distraught and withdrawn; (3) he was upset because he was not the breadwinner; and (4) he cried and felt stress during his difficult, ten-month job search. Furthermore, his distress continued after he began his new job at the lumberyard because that job did not provide the same fulfillment and enjoyment as his supervisory position. Because these facts are indistinguishable from the facts in *Webner*, we uphold the jury's decision to award emotional distress damages.

### e. Liquidated Damages

If an employer willfully violates the ADEA, the plaintiff is entitled to liquidated damages, in an amount equal to the actual damages awarded. 29 U.S.C. § 626(b) (cross-referencing 29 U.S.C. § 216). An employer willfully violates the ADEA when it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1129 (8th Cir. 1999) (quotation omitted). A plaintiff can prove willfulness by using the same evidence it used to prove an ADEA violation, *id.*, but "[l]iquidated damages are not warranted merely because an employer knows that the ADEA may be 'in the picture'" when it makes an employment decision, *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321, 324 (8th Cir. 1997).

Titan argues that there was insufficient evidence for the jury to find that it acted willfully in discriminating against Christensen based on his age. Instead, Titan contends it did not hire Christensen because it eliminated his position for economic reasons. The district court held that the evidence was sufficient to support the jury's finding of a willful violation of the ADEA because (1) Titan did not argue at trial that poor economic conditions required it to hire a younger worker, and (2) Titan's refusal to identify who made the decision not to hire Christensen permitted an inference that

Titan was willfully violating the ADEA by discriminating against Christensen. Viewing the evidence in the light most favorable to the verdict, we find sufficient evidence for a reasonable jury to conclude that Titan willfully violated the ADEA. The jury heard evidence that Titan knew age discrimination was against the law, that Titan hired Elswick, a younger and less-qualified worker than Christensen, and that Elswick performed the same duties Christensen previously performed at Quintak. This evidence, along with Titan's failure to argue that the poor economic conditions required it to hire a younger worker and the reluctance of the Titan decision-makers to accept responsibility for making the decision not to hire Christensen, is sufficient for a reasonable jury to find that Titan possessed the required mental state of willfulness to support an award of liquidated damages. *See Spencer*, 173 F.3d at 1129 (affirming the finding that an employer willfully violated the ADEA because the same evidence that supported the ADEA violation, "although thin," also supported the finding of willfulness).

### 2.     New Trial

Titan moved, in the alternative, for a new trial. We review the denial of a motion for a new trial for an abuse of discretion. *Chalfant*, 475 F.3d at 992. "The district court has the sound discretion to grant a new trial, and we will not reverse its decision unless there is a clear showing of abuse of discretion." *Id.* (internal quotations omitted). A new trial is appropriate when the "outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Id.* (internal quotation omitted). Titan did not provide any additional arguments in support of its request for a new trial. Based upon the evidence presented to the jury, the jury's verdicts do not constitute a miscarriage of justice, and the district court did not abuse its discretion in denying the motion for a new trial.

## B.     Front Pay

Titan argues that the district court erred in awarding Christensen front pay because he failed to mitigate his damages and because it would overcompensate him. The district court determines whether to award front pay, and we review its award of front pay for an abuse of discretion.  *Hartley*, 310 F.3d at 1062.  Front pay is appropriate to "make a party whole when reinstatement is impractical or impossible." *Ollie v. Titan Tire Corp.*, 336 F.3d 680, 687 (8th Cir. 2003).  When awarding front pay, a district court should consider the plaintiff's ability to find new employment with "comparable compensation and responsibility." *Id.*

Titan and Christensen stipulated that reinstatement was not an option.  The district court granted front pay to Christensen based on the jury's finding that Christensen did mitigate his damages.  Sufficient evidence supported the jury's determination.  Christensen hired career service counselors to help him in his job search once Titan did not hire him.  He diligently searched for another job for ten months before he was offered a job with lower compensation and fewer responsibilities at the lumberyard.  The district court also decided that it was not inequitable to award front pay in addition to the awards of punitive and liquidated damages.  The front pay award appropriately compensated Christensen because he was unable to find a new position with comparable compensation or responsibility. Therefore, we do not find an abuse of discretion in the district court's decision to award front pay.[7]

_____

[7]To the extent that Titan attempts to argue that the district court abused its discretion with respect to the actual amount of front pay awarded, it provides no argument or case law to support this argument.  Therefore, we find that it has abandoned this argument. *See* Fed. R. App. P. 28(a)(9)(A); *United States v. Pizano*, 421 F.3d 707, 720-21 (8th Cir. 2005).

## III. CONCLUSION

Accordingly, we affirm the judgment of the district court.

_____