# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-2419/07-2420/08-1819/08-2048

_____

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | * * * | |
| Appellant/Cross-Appellee, | * * | |
| Richelle Dooley; Angie Gacke, | * | Appeals from the United States |
| | * | District Court for the |
| Cross-Appellees, | * | District of South Dakota. |
| | * | |
| v. | * | |
| | * | |
| Siouxland Oral Maxillofacial Surgery Associates, L.L.P., | * * | |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: March 12, 2009
Filed: August 27, 2009

_____

Before WOLLMAN, RILEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The Equal Employment Opportunity Commission ("EEOC") brought this action alleging that Siouxland Oral Maxillofacial Surgery Associates, L.L.P. ("Siouxland"), terminated Richelle Dooley and refused to hire Angie Gacke because they were pregnant, in violation of Title VII of the Civil Rights Act of 1964, as amended by the

Pregnancy Discrimination Act. A jury found that Siouxland discriminated against Dooley and Gacke and awarded back pay to each. The district court denied the EEOC's request to instruct the jury on punitive damages, and granted Siouxland judgment as a matter of law on the claims for punitive damages. The court also denied the EEOC's request for injunctive relief, and awarded attorney's fees to Dooley and Gacke.

The EEOC appeals, arguing that the district court should have submitted the claim for punitive damages to the jury and granted its request for injunctive relief. Siouxland cross-appeals the district court's award of attorney's fees, and conditionally cross-appeals the district court's denial of its severance motion. We conclude that the jury should have been instructed on punitive damages, and we therefore reverse in part, and remand for a new trial on the punitive-damages claim.

I.

Siouxland is a medical clinic in Sioux Falls, South Dakota, specializing in oral and maxillofacial surgery. In late December 2001, Siouxland hired Richelle Dooley to work as a receptionist and scheduler. Dooley began working at Siouxland on January 2, 2002. The next day, when asking how to complete her health benefit forms, Dooley informed her supervisor, Shelley Hofer, that she was pregnant. Hofer congratulated Dooley and asked when the baby was due and how long of a maternity leave she planned to take. Dooley answered that her baby was due in July and that she was unsure how long she intended to be on leave but thought possibly six to eight weeks. Dooley asked whether the maternity leave would be a problem, and Hofer responded that it would not, because Siouxland could "hire a temp to come in and cover you during that time."

Hofer then informed one of Siouxland's partners, Dr. Bernard Balaban, as well as the managing partner, Dr. Harvey Lee Akerson, about Dooley's pregnancy, and

Akerson decided that Dooley must be terminated. According to Kathy Fjellestad, Siouxland's business manager, Akerson stated in a meeting about Dooley, "the young lady we just hired is going to have a baby this summer, she isn't going to be available to work. It doesn't make any sense to begin training her . . . when she won't be able to work the summer . . . . [W]e are going to have to let her go." Balaban said at this meeting that "we can't" or "we shouldn't" terminate Dooley, and Fjellestad informed Akerson that Siouxland could not terminate Dooley because of her pregnancy.

Later that morning – Dooley's second day of work at Siouxland – Fjellestad and Hofer informed Dooley that Akerson had decided to let her go. When Dooley asked why, Fjellestad explained, "your baby is going to be due during our busy season," and said that they never would have hired Dooley if they had known she was pregnant. Dooley asked why Siouxland could not hire a temporary worker, as Hofer had previously stated, and Fjellestad said that was not an option during the busy season. Dooley offered to take only one week of maternity leave, but Fjellestad said that would not be fair to Dooley or her baby. Dooley then packed up her belongings and left the office. Siouxland twice attempted to replace Dooley, but the individuals who were hired worked only a few days before either they quit or Siouxland terminated them. Siouxland did not hire a successful replacement until July 2002.

On March 11, 2002, Angie Gacke contacted Siouxland about applying for an advertised position in central sterilization and post-operative recovery. The advertisement stated, "Training in Medical Technology, Dental Assisting or Surgical Technology desirable." Gacke spoke with Sherena Kost, who was listed as the contact person in the advertisement and who serves as the supervisor of Siouxland's surgical staff. Gacke asked whether her education and experience made her "minimally qualified" for the job. Gacke had been trained to be, and was then working as, a cardiac ultrasound technician. Kost told her that she could qualify for the position, requested that Gacke send a copy of her resumé by e-mail, and scheduled an interview for the next day.

Kost and two other Siouxland employees, one of whom was Jennifer DeVries, interviewed Gacke the next day. During the interview, they discussed Gacke's background and qualifications, the job responsibilities, and Siouxland's wages and benefits. At some point near the end of the interview or immediately after it, Gacke told Kost, "I don't know if this is a problem or not, but I do want to let you know I am four months pregnant." According to Gacke, Kost responded, "yes, it's a problem. You are just going to end up causing more work for everybody else than you will be helping them." Kost also explained that Gacke's August due date was "in the middle of our busy season, and we don't grant any vacation or anything to anybody during the busy season." DeVries recalled Kost responding to Gacke's mention of her pregnancy by stating that "because of her pregnancy occurring at the time it was going to be occurring, that it would be best if she just continue her pregnancy, have the baby, have her maternity leave, and then we would talk." Kost wrote on a copy of Gacke's resumé that Gacke was "'over qualified' for job," that she needed insurance, and that she was "4 months pregnant!" Later on the day of the interview, Kost called Gacke and left her a message informing her that she had not been hired for the open position. Kost was aware throughout this process that discriminating on the basis of pregnancy was illegal.

On December 28, 2004, the EEOC brought this action alleging that Siouxland terminated Dooley and refused to hire Gacke because they were pregnant, in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 2000e(k), 2000e-2(a). Shortly thereafter, Dooley and Gacke successfully moved to intervene in the case, and Siouxland moved for severance or for separate trials on Dooley's and Gacke's claims. The district court denied Siouxland's motion, and the case was eventually tried to a jury in April 2007. Throughout the trial, Siouxland contended that it had fired Dooley because she would not be available during its busy season, and that it would have done the same thing if she had been unavailable for a reason other than pregnancy. Siouxland likewise argued that Gacke was not hired because Kost discovered during the interview that Gacke was not qualified for the job. At the close of the plaintiffs'

case, the district court denied the EEOC's request to instruct the jury on punitive damages, and instead granted Siouxland judgment as a matter of law on the claim of such damages. The jury ultimately found that Siouxland discriminated against Dooley and Gacke, and awarded back pay of $15,341 to Dooley and $5757 to Gacke.

Following the district court's entry of judgment against Siouxland, the EEOC filed a motion for equitable relief, requesting additional back pay, prejudgment interest, and a permanent injunction. Gacke and Dooley also each moved for attorney's fees. The court denied the EEOC's request for injunctive relief and back pay, but granted the request for prejudgment interest and awarded Gacke and Dooley $43,200 in attorney's fees.

The EEOC now appeals, arguing that the district court should have submitted the claim for punitive damages to the jury and granted its request for injunctive relief. Siouxland cross-appeals the district court's award of attorney's fees, and conditionally cross-appeals the district court's denial of its severance motion.

II.

The EEOC argues first that the district court erred in refusing to submit its claim for punitive damages to the jury and granting Siouxland judgment as a matter of law on that claim. At the close of the plaintiffs' case, the district court concluded that "it has not been shown that there was a perceived risk that the actions [of Siouxland] would violate federal law to be liable on punitive damages. So punitive damages are not going to be submitted [to] the jury." We review the district court's decision *de novo*. *See Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 988 (8th Cir. 2007); *McDonough v. City of Quincy*, 452 F.3d 8, 23 (1st Cir. 2006). Judgment as a matter of law is appropriate only if the opposing party "has been fully heard on an issue" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

Under Title VII, punitive damages are available if a plaintiff shows that the employer engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights" of the victim of discrimination. 42 U.S.C. § 1981a(b)(1). In *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), the Supreme Court explained that "'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535. Thus, in order to be liable for punitive damages, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Id.* at 536. A plaintiff does not need to show that the employer engaged "in conduct with some independent, 'egregious' quality." *Id.* at 538. If a plaintiff shows that an employee of the company acted with the requisite malice or reckless indifference, the plaintiff must then show that the employee's mental state can be imputed to the employer. *Id.* at 539. The malice or reckless indifference of employees serving in a managerial capacity and acting within the scope of their employment may be imputed to the employer. *Id.* at 543. An employer may avoid liability for punitive damages, however, if it shows that the employees' actions "are contrary to the employer's good-faith efforts to comply with Title VII." *Id.* at 545 (internal quotation omitted); *see Dominic v. DeVilbiss Air Power Co.*, 493 F.3d 968, 974-76 (8th Cir. 2007).

Here, the evidence presented by the EEOC at trial was sufficient for a jury to find that Siouxland acted in the face of a perceived risk that it was violating Dooley's and Gacke's Title VII rights. With respect to Dooley, the EEOC presented evidence that Akerson, who ordered Dooley's termination, knew that pregnancy discrimination was illegal. The EEOC also showed that Akerson was warned by Fjellestad that Siouxland could not fire Dooley because she was pregnant, and by Balaban that Siouxland could not or should not terminate Dooley's employment. This evidence was sufficient for a jury to infer that Akerson acted knowing that his conduct may be violating federal law. As the managing partner of Siouxland with authority over employment decisions, Akerman was indisputably a managerial employee acting

within the scope of his employment, and any malice or reckless indifference on his part could thus be imputed to Siouxland.

The evidence with respect to Gacke also was sufficient to submit the question of punitive damages to the jury. Kost, who made the decision that Gacke would not be considered further for the open position, testified that she knew that discrimination on the basis of pregnancy was illegal. From this evidence, a reasonable jury could infer that Kost knew that she may be violating federal law by considering pregnancy as a factor in rejecting Gacke's application for employment. As the supervisor of Siouxland's surgical staff – with authority to conduct the initial interviews for prospective surgical staff, to reject applicants who are not right for the job, and to recommend applicants to be hired – Kost was employed in a capacity with sufficient managerial responsibility for her action to be imputed to Siouxland.

Siouxland contends that the actions of Akerson and Kost do not constitute malice or reckless indifference because neither thought that they were engaging in pregnancy discrimination. *See Kolstad*, 527 U.S. at 537 (noting that punitive damages would be inappropriate when "the employer discriminates with the distinct belief that its discrimination is lawful"). According to Siouxland, Akerson terminated Dooley because she would be unavailable when needed during Siouxland's busy season, and Kost screened out Gacke because she was unqualified for the job.

Siouxland offers one reasonable interpretation of the evidence presented at trial, but the jury evidently did not accept it. If the jury believed that Akerman terminated Dooley solely because of her unavailability, then it should not have found Siouxland liable for pregnancy discrimination against Dooley. *See Rhett v. Carnegie Ctr. Assocs.* (*In re Carnegie Ctr. Assocs.*), 129 F.3d 290, 296-98 (3d Cir. 1997); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737-39 (7th Cir. 1994). Likewise, if the jury believed Kost that Gacke was rejected exclusively because she was unqualified, then it should not have found Siouxland liable to Gacke. Having found that pregnancy was

a motivating factor in each case, and presented with evidence that Akerman and Kost knew that pregnancy discrimination was illegal, a reasonable jury also could find that their discrimination was recklessly indifferent to the federally protected rights of Dooley and Gacke.

Siouxland asserts that a contrary conclusion is dictated by our prior cases. Yet Siouxland points to no case in which we held that punitive damages were inappropriate as a matter of law where, as here, evidence was presented to the jury that a managerial employee engaged in discrimination while knowing that federal law prohibited such discrimination. In many of the cases cited by Siouxland, this court did not address whether the plaintiff had presented evidence that the decisionmaker had knowledge of federal discrimination law when discriminating. *See Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 943 (8th Cir. 2007); *Ollie v. Titan Tire Corp.*, 336 F.3d 680, 688-89 (8th Cir. 2003); *Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 837 (8th Cir. 2001). Siouxland relies heavily on *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894 (8th Cir. 2006). There, we vacated an award of punitive damages under the Americans with Disabilities Act ("ADA") because the employer's actions failing reasonably to accommodate the plaintiff, while sufficient for liability, did not rise to malice or reckless indifference. *Id.* at 903. But in *Canny*, there was no evidence that the employer was aware that it may have been violating the ADA. On the contrary, the employer thought its actions were required by other federal regulations. *See id.*

Finally, citing *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1096 (8th Cir. 2007), and *Chalfant v. Titan Distribution, Inc.*, 475 F.3d at 991, Siouxland suggests that inconsistent explanations for the adverse employment action by the employer are a prerequisite to liability for punitive damages. While we did note the employer's inconsistent explanations in *Christensen* and *Chalfant* as added support for a jury's finding that the employer knew it might be acting in violation of federal law, we never held that such evidence is required to prove malice or reckless

indifference. And in both cases, we also relied on evidence that the employer was familiar with the relevant federal discrimination law. *See Christensen*, 481 F.3d at 1096; *Chalfant*, 475 F.3d at 991.

We therefore conclude that the district court erred in granting Siouxland judgment as a matter of law on Dooley's and Gacke's punitive-damages claims. We remand for a new trial solely on the issue of punitive damages. *See Madison v. IBP, Inc.*, 330 F.3d 1051, 1061 (8th Cir. 2003); *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1171 (10th Cir. 2006).

Siouxland filed a conditional cross-appeal, arguing that if the district court erred by refusing to submit punitive damages to the jury, then we should hold that the district court also erred in denying Siouxland's motion for severance or for separate trials on Dooley's and Gacke's claims. *See* Fed. R. Civ. P. 20(b), 42(b). Siouxland's argument is premature, however, because the district court's prior ruling was rendered in the context of a motion for separate trials on both liability and damages. The district court had no occasion to consider whether a trial on the issue of punitive damages alone should be convened jointly or separately. We therefore leave this issue for the district court to decide in the first instance on remand.

III.

The EEOC next contends that the district court abused its discretion in denying the EEOC's request for injunctive relief. In its complaint, the EEOC sought a permanent injunction barring Siouxland from discriminating on the basis of sex or pregnancy. On April 10, 2007, following the jury verdict, the district court entered judgment against Siouxland but did not address the injunction requested in the EEOC's complaint. On May 10, 2007, the EEOC filed a "motion for equitable relief," which asked the district court to permanently enjoin Siouxland from discriminating on the basis of pregnancy or retaliating against any employee who complains of

unlawful discrimination. In addition, the EEOC sought to require Siouxland to conduct employee training on Title VII, to revise its employment discrimination policies, and to post various notices about federal employment discrimination law and the outcome of this case. It also proposed requiring Siouxland to notify the EEOC of employment decisions covered by 29 C.F.R. § 1602.14, to comply with the recordkeeping requirements of that regulation, and to make such records available for inspection by the EEOC. Finally, the EEOC requested that Siouxland be required to report compliance with the injunction to the district court for three years. The district court treated the EEOC's motion as a motion for relief from a final judgment under Federal Rule of Civil Procedure 60(b), and denied the EEOC's request for injunctive relief.

We first address Siouxland's contention that we lack jurisdiction to hear this appeal from the district court's order denying injunctive relief. Siouxland argues that we lack jurisdiction because the district court improperly construed the EEOC's request for injunctive relief as a motion under Rule 60(b), when in fact it should have been denied as an untimely motion under Federal Rule of Civil Procedure Rule 59(e). Rule 59(e) allows a motion to amend a judgment only if it is filed within ten days of entry of judgment. Rule 60(b) motions, on the other hand, may be filed after this time period, but only if the motion satisfies one of several enumerated grounds for relief under the Rule. *See Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 488-89 & n.1 (8th Cir. 1992). Even if Siouxland is correct that *the district court* could not have granted the requested injunctive relief under Rule 60(b), that conclusion would not affect our appellate jurisdiction. Indeed, in *Reyher*, this court exercised jurisdiction to vacate the district court's improper grant of Rule 60(b) relief. *Id.* at 489. We therefore reject Siouxland's jurisdictional argument.

Because the district court denied the EEOC's request for injunctive relief, and no party appealed the district court's grant of prejudgment interest under Rule 60(b), we need not confront the questions whether the EEOC stated proper grounds for relief

under Rule 60(b) or whether Rule 60(b) could provide authority to impose the requested injunction. *See Reyher*, 975 F.2d at 488-89 & n.1. Assuming without deciding that the court could have granted the motion under Rule 60(b), we see no abuse of discretion in its refusal to do so.

If a district court finds that an employer engaged, or continues to engage, in intentional discrimination, "the court *may* enjoin" the employer from engaging in such discrimination and may order any affirmative action or other equitable relief the court deems appropriate. 42 U.S.C. § 2000e-5(g)(1) (emphasis added). "[O]ne of the central purposes of Title VII is to make persons whole for injuries suffered on account of unlawful employment discrimination," and district courts have wide discretion to fashion appropriate relief. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (internal quotation omitted). There is no presumption that broad injunctive relief of the sort urged by the EEOC should issue upon a finding of intentional discrimination. *See Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 676 (8th Cir. 2006) (affirming denial of permanent injunction); *Johnson v. Brock*, 810 F.2d 219, 225 (D.C. Cir. 1987) ("Although enjoining a defendant from further acts of discrimination is a typical remedy in Title VII cases, this court has never held that it is a mandatory remedy; nor have we held that the burden is on the defendant to disprove the need for such an injunction by clear and convincing evidence.").

The district court did not abuse its discretion in denying the EEOC's request for injunctive relief. The court permissibly reasoned that in light of the two isolated instances of discrimination, occurring more than five years before the request for injunctive relief, there was not a consistent practice of discrimination suggesting that further discrimination was likely. Similarly, because the record contained no evidence of retaliation by Siouxland, the court reasonably determined that there was no basis for enjoining retaliatory conduct. While the court did not address individually its reasons for denying the other injunctive requests, it explained that it found back pay and attorney's fees sufficient to meet the goals of Title VII in the circumstances of this

case. It is clear that the court understood its authority, and a more detailed explanation was not necessary. *See Barbano v. Madison County*, 922 F.2d 139, 146-47 (2d Cir. 1990).

## IV.

On cross-appeal, Siouxland argues that the district court abused its discretion in awarding attorney's fees to Dooley and Gacke. Dooley and Gacke, who were represented by a single attorney, sought attorney's fees of $48,949.24 and $49,465.60, respectively. The district court found that much of their counsel's billing submissions were duplicative because counsel sought payment for the same time periods from both Dooley and Gacke. The district court also found that in several instances, counsel billed for time attending depositions that was significantly longer than the depositions lasted, according to the court reporter's documentation, without explaining the discrepancies. The district court therefore recalculated attorney's fees after reducing the number of hours to account for the double billing and the deposition discrepancies, and awarded a total amount of $43,200 to Dooley and Gacke for attorney's fees.

Siouxland contends that this award was an abuse of discretion in light of the limited role that counsel for Dooley and Gacke played in the case, the status of Dooley and Gacke as intervenors, the relatively uncomplicated nature of the case, and the degree of success in the case. Siouxland also argues that counsel's billing submissions were not supported by adequate documentation, and that the court should have refused to award any fees in light of counsel's double-billing practice.

Because we have concluded that further proceedings are necessary on the issue of punitive damages, we decline to address the district court's award of attorney's fees at this juncture. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 865 (7th Cir. 2001). Depending on the resolution of the claims for punitive damages, the district court may be asked to consider an award of additional attorney's fees. The degree of success

obtained is an important factor in determining a fee award, *see Farrar v. Hobby*, 506 U.S. 103, 114 (1992), and the court will not be in a position to evaluate that factor comprehensively until a final judgment is entered on all claims. In this case, moreover, it is clear that the district court was troubled by counsel's objectionable billing practices, and the court should be permitted to take that conduct into account when resolving the fee application in its entirety. We express no view at this time on the reasonableness of the initial fee award or the appropriateness of an additional award after further proceedings on remand.

\* \* \*

For these reasons, we reverse the district court's decision to grant judgment as a matter of law for Siouxland on the issue of punitive damages, affirm the district court's denial of the EEOC's request for equitable relief, and remand for further proceedings consistent with this opinion.

_____