# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1651

_____

Jack Randall; Pearl Randall,        *
        *
      Appellants,        *
        *    Appeal from the United States
    v.        *    District Court for the
        *    Eastern District of Missouri
Federated Retail Holdings, Inc.,      *
        *
      Appellee.        *

_____

Submitted:  November 14, 2005
Filed:  November 23, 2005

_____

Before MURPHY, McMILLIAN, and GRUENDER, Circuit Judges.

_____

McMILLIAN, Circuit Judge

In this diversity action, Jack and Pearl Randall appeal from a final order entered in the United States District Court[1] for the Eastern District of Missouri granting a Directed Verdict in favor of May Department Stores Co. ("May"), [2] in their nuisance case. On appeal, the Randalls challenge the district court's Directed

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[2]Now Federated Retail Holdings, Inc.

Verdict on their nuisance claim and the district court's granting of May's Motion *In Limine* No. 1, restricting the Randalls' proof of damages to those damages accrued as of the date of filing of the initial complaint. For the reasons discussed below, we affirm the judgment of the district court.

**Background**

In 1961, May purchased the property to the east and south of the four-story building located at 224 North Seventh Street in St. Louis, Missouri (the "Randall Building"). In 1962, May built a multi-story parking garage with basement level parking on its property immediately adjacent to the Randall Building. Only six to eight inches separate the east wall of the Randall Building and the west wall of May's parking garage.

In March 1962, May and the then-owners of the Randall Building entered into a license agreement under which May built an emergency exit on its property allowing exiting from the basement restaurant in the Randall Building into the stairwell of May's parking garage for emergency purposes. The license agreement provided it would expire if certain events occurred affecting May's parking garage or on March 31, 2000.

In 1976, the Randalls purchased the Randall Building, knowing that the second, third and fourth floors of the building did not have any emergency exits. The Randalls wished to convert the top three floors to residential use. In order to do so, the City of St. Louis required the Randalls to install an emergency exit on the fourth floor of the building.

On January 5, 1978, the Randalls and May entered into a license agreement granting the Randalls a license for emergency exiting purposes from the second, third

or fourth floors of the Randall Building into the stairwell of May's parking garage. Like the 1962 license agreement, the 1978 license agreement provided that it would expire no later than March 31, 2000. May broke through its parking garage wall to accommodate the emergency exit on the fourth floor of the Randall Building, and, like the basement exit, the fourth floor exit entered into May's property.

In 1978, the Randalls installed a new sprinkler system in the basement of the Randall Building. Pursuant to an oral license, May permitted the Randalls to use May's private waterline as a source of water for the Randall Building's sprinkler system.

In 2000, May sent the Randalls notice that the licenses for the emergency exits from the Randall Building into May's parking garage were expiring on March 31, 2000. In early 2000, May offered to lease the first floor of the Randall building for $20 per square foot, and the Randalls rejected it. In February 2000, May offered to purchase the Randall Building for $350,000, and again the Randalls rejected the offer.

On March 31, 2000, the license agreements for the emergency exits expired. On April 25, 2000, May revoked the oral license permitting the Randalls to use the waterline. May capped the water supply to the fire sprinkler system in the Randall Building, and on April 25, 2002, May sealed the emergency exits from the Randall Building into the stairwell of May's parking garage.

The Randalls installed a new water connection for the sprinkler system in the basement of their building at a cost of $33,142.00.

The Randalls filed suit against May on February 25, 2003, in the Circuit Court of St. Clair County, Illinois. The Randalls sought monetary damages based upon state common law claims, including interference with the right of quiet enjoyment, tortious interference with prospective economic advantage, and nuisance. May

removed the case to the U.S. District Court for the Southern District of Illinois based on diversity jurisdiction. The case was then transferred to the U.S. District Court for the Eastern District of Missouri.

On May 23, 2003, May filed a Motion to Dismiss, or in the alternative, a Motion for More Definite Statement, asserting that the Randalls failed to plead the necessary elements of their stated causes of action. The district court allowed the Randalls to file an amended complaint. The Randalls' Second Amended Complaint alleged that May: (1) interfered with their right of quiet enjoyment (Count I); (2) tortiously interfered with their prospective economic advantage (Count II); and (3) created a nuisance (Count III). The Randalls also claimed a right to an "easement by necessity" (Count IV).

On February 26, 2003, the district court dismissed the Randalls' claims for interference with the right of quiet enjoyment (Count I), tortious interference with prospective economic advantage (Count II), and imposition of an easement by necessity (Count IV). The nuisance claim (Count III) remained the issue for trial.

Prior to trial, the district court granted May's Motion *In Limine* No. 1, restricting the Randalls' proof of damages to those damages that had accrued as of the date of filing of the initial Complaint because the Randalls failed to specifically request an injunction in the prayer for relief of Count III.

A jury trial began on November 15, 2004. On November 17, 2004, at the conclusion of the Randalls' evidence, the district court granted May's Motion for a Directed Verdict, entering judgment in favor of May. On December 2, 2004, the Randalls filed their Motion to Vacate the Directed Verdict Finding. The district court denied the Randalls' contention that the reasonableness of the defendant's land use is the primary question in a nuisance suit. Instead, the district court held that "before issues of reasonableness can be addressed by the jury, Plaintiffs must demonstrate

-4-

that they have a right susceptible to legal protection under Missouri nuisance law." Relying on *44 Plaza, Inc. v. Gray-Pac Land Co.*, 845 S.W.2d 576 (Mo. Ct. App. 1992) (*44 Plaza, Inc.*), the district court further held that the Randalls did not demonstrate a right susceptible to legal protection and denied the Randalls' Motion to Vacate. The Randalls appealed.

## Discussion

We review the grant of a motion for directed verdict *de novo*, applying the same standard used by the district court, which is Fed. R. Civ. P. 50. *Arabian Agriculture Services Co. v. Chief Industries, Inc.*, 309 F.3d 479, 482 (8th Cir. 2002). Under Fed. R. Civ. P. 50, a judgment as a matter of law is appropriate "if during a trial by jury a party has been heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1).

The Randalls first challenge the district court's reliance on the nuisance standard stated in *44 Plaza, Inc.* In that case, the court held that "[o]ne of the prerequisites to a cause of action for nuisance is that the right of enjoyment which is impaired must be a right that is susceptible to legal protection." 845 S.W.2d at 578. First, the Randalls contend that they did have rights susceptible to legal protection: (1) to be able to escape their residence safely in the event of fire, (2) to be able to occupy their home, (3) to be able to maintain the use of their building for residential use, (4) to be able to rent the commercial portion of their building, and (5) to be able to use or sell their building for a fair market price. The Randalls contend these rights are distinguishable from the right to a view, which was the focus of *44 Plaza, Inc.* and which was held to be an unprotected right. *See id.*

Each one of the rights the Randalls assert existed only because of the license agreements. Once the license agreements expired, the Randalls were no longer able

to rely on May to provide them these rights. In Missouri, "[a] license is a privilege to enter certain premises for a stated purpose and does not vest any title, interest or estate in the licensee." *Hill v. Eads*, 970 S.W.2d 882, 883 (Mo. Ct. App. 1998) (citing *Hermann v. Lynnbrook Land Co.,* 806 S.W.2d 128, 130 (Mo. Ct. App.1991)). Because May no longer had any obligation to provide the Randall Building with fire escapes and water to the sprinkling system, it was proper for May to seal its exits and sever its waterline to prevent others from using May's property without May's consent. By allowing the licenses to expire pursuant to the license agreements, May and the Randalls simply put the Randall Building in the same place it was before those agreements came into being.

The Randalls next contend that the district court was wrong to rely on *44 Plaza, Inc.* First, the Randalls claim that the standard set forth in dicta in *Howe v. Standard Oil Co. of Indiana*, 150 S.W.2d 496 (Mo. Ct. App. 1941), is the appropriate standard for nuisance. In *Howe*, the court stated that "[t]here must be something more [than merely the inconvenience of neighbors to enjoin a property owner from doing lawful acts], such as an injurious invasion of a fixed and determined property right, or a use creating a discomfort in the enjoyment of the property which threatens the health or welfare of the occupant, with resultant injury to property." *Id.* at 497. The Randalls claim that the district court applied only the first part of the test to rule that no "fixed and determined property right" had been invaded. The Randalls contend the district court erred in failing to apply the second part of the test to determine whether the Randalls' use created a "discomfort in the enjoyment of the property which threaten[ed] the health or welfare of the occupant, with resultant injury to property." *Id.* The Randalls assert that May's cutting off the water and blocking the emergency exits threatened the health and welfare of the Randall Building's occupants and resulted in the severe diminution of the Randall Building's value.

*Howe* helps May more than the Randalls. The court in *Howe* decided that no nuisance had occurred because "Plaintiff's real contention is Defendant should permit

the use of its land as part of the right of way to Plaintiff's land" and no "right of way in defendant's premises [existed], either by prescription or by grant, which might be protected by an injunction." *Id.* The Randalls, like the plaintiffs in *Howe*, seek to physically use May's property without a right to do so by prescription or grant.

Finally, the Randalls claim that "nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his [or her] property." *Frank v. Environmental Sanitation Mgmt.*, 687 S.W.2d 876, 880 (Mo. 1985) (en banc). The Randalls claim that the focus should be on the reasonableness of May's actions and that reasonableness is a question for the jury, not the judge. The Randalls argue that May's sealing the emergency exits and capping the water line constitute unreasonable uses of May's property because these acts were done only to force the Randalls to sell the Randall Building for a price far below market value.

Reasonableness is a question for the jury; however, the issue of reasonableness and the balancing of the above-mentioned factors can only occur after the plaintiff has presented a submissible case. Under Missouri law, a submissible nuisance claim requires a right of enjoyment susceptible to legal protection. *44 Plaza, Inc.*, 845 S.W.2d at 578. Here, each of the rights that the Randalls claim stem from the expired license agreements.

The Randalls also challenge the district court's ruling on May's Motion *In Limine* No. 1, restricting the Randalls' proof of damages to those damages accrued as of the date of filing the initial Complaint. However, because the Randalls failed to make a submissible case of nuisance, we need not address the issue of the scope of damages.

## Conclusion

For the above stated reasons, we affirm the district court's judgment.

_____