# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2163
_____

Raul Gardea

*Plaintiff - Appellant*

v.

JBS USA, LLC; Swift Pork Company

*Defendants - Appellees*

ConAgra Foods, Inc.

*Defendant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: December 13, 2018
Filed: February 8, 2019
_____

Before LOKEN and ERICKSON, Circuit Judges, and MAGNUSON,[1] District
Judge.

_____

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the
District of Minnesota, sitting by designation.

MAGNUSON, District Judge.

Appellant Raul Gardea appeals the District Court's[2] grant of summary judgment in favor of Appellees JBS USA, LLC and Swift Pork Company (collectively, "JBS"). For the following reasons, we affirm.

## I.    Background

Appellant Raul Gardea worked at Appellee Swift Pork Company, a wholly owned subsidiary of Appellee JBS USA, as a maintenance mechanic at JBS's pork processing facility in Marshalltown, Iowa. In early 2014, Gardea was treated for carpal tunnel syndrome in his right wrist. In February 2014, Gardea's main treating physician, Dr. Paulson, imposed a temporary work restriction limiting Gardea to lifting no more than 40 pounds with his right arm.

Gardea's temporary work restrictions changed multiple times throughout 2014, as his physicians continued to increase and lower the amount of work he could do with his right arm based upon his capacity and level of pain. JBS accommodated Gardea's work restrictions during this time by giving him light duty work.

Finally, in October 2014, Gardea underwent a functional capacity evaluation ("FCE"). Based on the FCE, the testing physician imposed new work restrictions: waist to floor lifting of 35 pounds; waist to crown lifting of 25 pounds; bilateral carrying of 30 pounds; and right unilateral carrying of 15 pounds. Gardea's physician also noted that he had significant difficulty holding, grabbing, and releasing tools, and doubted his ability to return to work as a mechanic. In November 2014, Dr.

---

[2] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

Paulson concluded that Gardea had reached maximum medical improvement and made the work restrictions from the FCE permanent.

JBS determined that Gardea could no longer perform the duties of a maintenance mechanic because of his permanent work restrictions. Specifically, JBS concluded that it could not accommodate Gardea's lifting restrictions because his job duties required him to regularly lift objects weighing more than 40 pounds. On December 1, 2014, JBS told Gardea that he was medically disqualified from the maintenance mechanic position due to his permanent restrictions. JBS offered Gardea six replacement jobs that would not interfere with his work restrictions. Gardea had no interest in the jobs for various reasons, including pay, hours, and job responsibilities, and he turned down every offer. JBS placed him on medical leave without pay, stating that he was free to apply for other jobs as they came open. Instead, Gardea found other employment and his employment with JBS ended automatically after 12 months on leave.

Gardea filed suit against JBS pursuant to the Americans with Disabilities Act ("ADA"), the Iowa Civil Rights Act ("ICRA"), and the Iowa Wage Payment Collection Law ("IWPCL"). Gardea's complaint contained two counts: first, a failure-to-accommodate claim and a termination claim under the ADA and ICRA, and second, an IWPCL claim, alleging that JBS intentionally failed to pay Gardea a portion of his earned wages. In March 2017, JBS sought summary judgment on all issues. In May 2017, the district court granted JBS's motion for summary judgment. Gardea appealed.

## II.  Discussion

### A.  *Standard of Review*

We review a grant of summary judgment de novo.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2).

### B.  *Failure-to-Accommodate Claim*

The first count of Gardea's complaint pleads a failure-to-accommodate claim under the ADA and ICRA.  We analyze ADA and ICRA disability discrimination claims under the same standards.  Tjernagel v. Gates Corp., 533 F.3d 666, 671 (8th Cir. 2008).

To prevail on a failure-to-accommodate claim, a plaintiff "must first make a facial showing that he has an ADA disability and that he has suffered [an] adverse employment action.  Then he must make a facial showing that he is a 'qualified individual.'"  Fenney v. Dakota, Minn. & E. R. Co., 327 F.3d 707, 712 (8th Cir. 2003).  When the employee has made his facial showing, "[t]he burden then shifts to the employer to show that it is unable to accommodate the employee."  Id. (quotation omitted).

#### 1.  Disability

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual."  42 U.S.C. § 12102(1).  The District Court held that Gardea was "arguably disabled" under the

ADA, and therefore there was a genuine issue of material fact precluding summary judgment on that issue. Gardea v. JBS USA LLC, No. 4:15-cv-00474, 2017 WL 5904675 at *2, 5 (S.D. Iowa, May 11, 2017).

JBS argues that Gardea is not disabled within the meaning of the ADA because lifting restrictions do not substantially limit any major life activities. (Appellees' Br. at 24.) However, lifting restrictions may qualify as a disability under the ADA Amendments Act ("ADAAA"), which relaxed the requirements for showing a disability. See Fleishman v. Continental Cas. Co., 698 F.3d 598, 606 n.3 (7th Cir. 2012) see 42 U.S.C. § 12102(4)(stating "[t]he definition of disability in this chapter shall be construed in favor of broad coverage"). In this case, the District Court relied on Equal Employment Opportunity Commission regulations, which broadened the definition of disability in the wake of the ADAAA, in determining that Gardea's lifting restrictions arguably qualified as a disability. Gardea, 2017 WL 5904675 at *3.

While lifting restrictions may qualify as a disability under the ADAAA, we need not make that determination. As discussed further below, even if Gardea is disabled, he is not qualified to perform the essential functions of his job, and his claim fails on that basis.

2.    Qualification

In order to show that he is a qualified individual under the ADA, Gardea must prove that he was able "to perform the essential functions of the position, with or without reasonable accommodation." Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2016) (quotation omitted). Essential functions of the position are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Accommodations are not reasonable if an employer "can demonstrate that the accommodation would impose undue hardship

on the operation of the business." 42 U.S.C. § 12112(5)(A). An employee must show that an accommodation is "reasonable on its face." U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401 (2002).

As the district court found, lifting is an essential function of the maintenance mechanic position. The record shows that mechanics must have the ability to lift objects weighing up to 100 pounds, carry ladders and motors in excess of 40 pounds, and frequently perform lifting between 10 and 50 pounds. (JA at 27, ¶¶ 25-27, 517-518, 560.) Gardea does not directly dispute that lifting is an essential function, but rather challenges the frequency with which heavy lifting is required in his position. However, "a task may be an essential function even if the employee performs it for only a few minutes each week." Minnihan v. MediaCom Commc'ns Corp., 779 F.3d 803, 812 (8th Cir. 2015). The record shows that heavy lifting is commonplace in the maintenance mechanic position. Therefore, the lifting of objects heavier than Gardea can lift is an essential function.

Gardea also alleges that his lifting restriction could have been reasonably accommodated because (1) assistance from other mechanics was available and (2) the use of lift-assisting devices was available.

First, assistance from other mechanics is not a reasonable accommodation. "'[A]n accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated' under the ADA." Id. at 813 (quotation omitted). Because Gardea's lifting limitations are so restrictive, he would require assistance lifting many commonplace objects involved in his job, including all ladders and machinery. The record reflects that certain storage areas are too small for two people to perform a lift, and other mechanics are not always available to assist others in lifting objects. (JA at 28, ¶¶ 32-33.) Because this accommodation would require JBS to extensively change its practices and work environment, it is unreasonable.

Second, the accommodation of lift-assisting devices is also unreasonable in this situation. Lift-assisting devices require overhead beams, which are not found in all areas of JBS's plant. (JA at 526, ¶ 29). Additionally, objects are sometimes in tight quarters which makes use of assisting devices impractical, and some lift-assisting devices require employees to first lift an object by hand onto the device. (JA at 527, ¶ 30.) It is utterly impractical to expect that a mechanic can function properly when he needs an assisting device to lift most objects, including ladders. Gardea's proposed accommodation is not reasonable on its face and would impose an undue hardship on the operation of JBS's business.

Finally, Gardea argues that the replacement positions JBS offered did not qualify as reasonable accommodations, and therefore JBSs did not engage in the "interactive process" as required under the ADA. See Kallail v. Alliant Enegergy Corp. Servs., Inc., 691 F.3d 925, 933 (8th Cir. 2012). "If an employer has offered reassignment as a reasonable accommodation, then the employee must offer evidence showing both that the position offered was inferior to [the employee's] former job and that a comparable position for which the employee was qualified was open." Id. at 933 (quotation omitted).

The jobs JBS offered Gardea had a lower rate of hourly pay, and therefore may be considered "inferior." However, Gardea has failed to show that a position comparable to his maintenance mechanic job was available. Gardea claims JBS did not offer him a labeling job that he desired, but the record reflects that the labeling position was already filled and offered an even lower rate of pay than the others JBS offered. (JA at 534 ¶ 36.) Because JBS offered Gardea several jobs within his restrictions, and he has failed to show that other, more comparable jobs were available, the district court was correct in holding that JBS fairly engaged in the interactive process and its attempts to accommodate Gardea with other jobs were reasonable.

Lifting is an essential function of the maintenance mechanic position that could not be reasonably accommodated, and Gardea has failed to show that accommodations JBS offered were unreasonable. Therefore, Gardea is not a qualified individual under the ADA and summary judgment in JBS's favor was proper.

## C.     Termination Claim

Gardea also argues that JBS violated the ADA and ICRA by placing him on medical leave and then terminating him 12 months later. To prevail on this claim, Gardea must show "that [he] (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment decision because of his disability." Tramp v. Associated Underwriters, Inc., 768 F.3d 793, 804 (8th Cir. 2014). As analyzed above, because Gardea was not a qualified individual under the ADA, his termination claim also fails.

## D.     IWPCL Claim

The IWPCL requires employers in Iowa to pay all wages when due. Iowa Code § 91A.8. If an Iowa employers intentionally violates its wage-payment obligations, then "the employer shall be liable to the employee for any wages . . . that are so intentionally failed to be paid . . . plus liquidated damages, court costs and any attorney's fees . . . " Iowa Code § 91A.8.

Gardea claims that JBS violated the IWPCL by failing to pay all wages he was due from July 25, 2014 through September 12, 2014. However, JBS's payroll records reflect that he was paid correctly and any errors in Gardea's hours were quickly remedied. (JA at 69-71, 539 ¶¶ 43-44.) Gardea submitted charts to support his argument but concedes that the information therein is from his own recollection.

(Appellant's Reply Br. at 20, n.4.)[3] Because mere allegations are insufficient to rebut a properly supported motion for summary judgment, the district court correctly granted summary judgment on this issue.

## III.    Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____

_____

[3] The District Court struck handwritten information on the charts, which Gardea continues to rely on, because it was unreliable.  (JA at 608.)