# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-2286

———————————————

Equal Employment Opportunity Commission

*Plaintiff - Appellee*

v.

Drivers Management, LLC; Werner Enterprises, Inc.

*Defendants - Appellants*

——————————

Appeal from United States District Court
for the District of Nebraska - Omaha

——————————

Submitted: May 14, 2025
Filed: July 10, 2025

——————————

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) sued Drivers Management and Werner Enterprises (collectively, Werner) on behalf of Victor Robinson, a deaf individual, under the Americans with Disabilities Act (ADA). The jury found in favor of the EEOC, awarding Robinson both compensatory and

punitive damages. After the ensuing bench trial on equitable relief, the district court[1] awarded Robinson backpay, reduced the punitive and compensatory damages award to comply with the statutory cap, ordered injunctive relief, and granted the EEOC's motion for prejudgment interest. Werner appeals multiple aspects of the proceedings, arguing that the district court erred when it granted a directed verdict on the issue of causation; granted summary judgment in favor of Robinson on Werner's affirmative defenses; made several adverse evidentiary rulings against Werner; denied Werner's motions for judgment as a matter of law; granted the EEOC injunctive relief; and authorized an award of prejudgment interest. Having jurisdiction under 28 U.S.C. § 1291 and discerning no error, we affirm.

I.

We recite the facts "in [the] light most favorable to the jury's verdict." See Inacom Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 689 (8th Cir. 2001). Federal regulations require all drivers to meet specific hearing requirements in order to obtain a Commercial Driver's License (CDL). 49 C.F.R. § 391.41(b)(11) (2022). The regulations, however, also allow an individual to obtain a medical variance from the Federal Motor Carrier Safety Administration (FMCSA) in order to obtain a CDL. Id. § 391.41(a)(3)(ii). Thus, an individual who is deaf, but "obtain[s] from FMCSA a medical variance from the physical qualification standards" is able to obtain a CDL and is deemed physically qualified to drive a commercial vehicle under federal law. Id.

Victor Robinson is a deaf individual who obtained his FMCSA variance in 2015. After receiving the paperwork documenting his medical clearance, Robinson enrolled in Roadmaster, a driver training school owned by Werner. Through Roadmaster, Robinson received over-the-road training from a trainer with the assistance of an interpreter, who communicated with Robinson from the backseat of

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

the vehicle throughout the process. After successfully completing the Roadmaster program, Robinson obtained his CDL.

Robinson applied to Werner for an over-the-road truck-driver position before finishing his Roadmaster training. Because Robinson had fewer than six months of experience driving a commercial truck, Werner policy obligated Robinson to go through the "placement driver program" before becoming a solo driver. This program required new hires without the requisite six months of experience to drive throughout the country for four to six weeks with a trainer, delivering customer orders while receiving contemporaneous corrections and instructions while driving. According to Werner, this training program required all trainees to be able to engage in verbal communications with their trainers, as any other method of communication would result in unsafe distractions from the road.

After submitting his application, Robinson received an email from Erin Marsh, a recruiting manager, informing him that his application had been preapproved and that he should contact Werner to discuss further opportunities. Robinson then called[2] Marsh, who spoke with him "about the job, the orientation, providing interpreting services," and other general matters. About a week later, Marsh emailed Robinson again, asking him to call that afternoon to speak with Werner's Vice President of Safety and Compliance, Jamie Hamm. Marsh participated in the call, introducing Robinson to Hamm. Hamm proceeded to inquire as to Robinson's ability to safely operate a truck and the previous accommodations he had received regarding over-the-road training in Roadmaster school. Hamm testified that, in preparation for the call with Robinson, she researched potential accommodations that Werner could provide to safely train Robinson while he participated in the placement driver program. However, Hamm had no documentation of her research, and an investigator for the Nebraska Equal Opportunity Commission, Lance Knapp, testified that, when he asked Hamm if she

---

[2]These calls were made assisted by a "relay service," meaning an interpreter was present with Robinson and relayed information between him and the other party.

-3-

had conducted research into potential accommodations prior to speaking with Robinson, Hamm said she had not done so. After discussing Robinson's previous accommodations, Hamm told Robinson, "No, I'm sorry, we can't hire you because of your deafness" and ended the call.

The EEOC then brought suit on behalf of Robinson, alleging that Werner violated the ADA when it failed to hire Robinson because of his deafness and need for a reasonable accommodation. The case proceeded through discovery, after which both parties moved for summary judgment. Relevant here, the district court partially granted the EEOC's motion, dismissing Werner's direct threat affirmative defense, through which Werner asserted that all deaf drivers posed a direct threat to others on the road because of their condition. The district court noted that Werner had failed to individualize the direct threat analysis as to Robinson, precluding Werner from establishing that defense as a matter of law. The district court also dismissed Werner's undue hardship defense because Werner expressly disclaimed any financial burden imposed by accommodating Robinson and did not point to any reason why accommodating Robinson would fundamentally alter its entire business, not just the training program.

The parties filed pre-trial motions in limine, which the district court partially granted and partially denied. Relevant here, the district court partially granted the EEOC's motion to exclude evidence of Robinson's subsequent driving history, which included several accidents, finding that the probative value of this evidence was outweighed by "the risk of confusing the issues, undue delay, and wasting time." The district court clarified, however, that Werner was free to inquire about any issues or accidents, if any, that occurred while Robinson was in training at other places of employment. Next, the district court denied without prejudice Werner's motion to exclude discriminatory comments made by Marsh and Werner's recruiters about deaf applicants, allowing Werner to re-assert its arguments at trial; these objections were subsequently overruled. Finally, the district court denied Werner's motion to exclude evidence of other trucking companies' policies regarding hearing impaired

drivers, finding this evidence directly relevant as to whether Werner's act of denying Robinson an accommodation was reasonable.

This case then went to a jury trial. Both parties timely moved for judgment as a matter of law. Werner argued that it was entitled to judgment as a matter of law because Robinson was not qualified for the position and there was no evidence of intentional discrimination sufficient to submit the issue of punitive damages to the jury; the district court denied the motion in full. The EEOC argued that Werner admitted that it did not hire Robinson because he was deaf; therefore, the jury could only find in its favor on the issue of causation. The district court granted the EEOC's motion because "[a]ll of Werner's explanations" for its failure to hire Robinson "[we]re premised on [his] deafness." The case was then submitted to the jury, which found that Werner failed to hire and failed to accommodate Robinson in violation of the ADA. It awarded Robinson $75,000 in compensatory damages and $36,000,000 in punitive damages. The district court subsequently reduced the punitive damages award to $300,000, the statutory maximum. See 42 U.S.C. § 1981a(b)(3)(D).

After the jury verdict, the case continued to a bench trial to determine applicable equitable relief. The district court held that, because the EEOC had proven that Werner discriminated against Robinson by a preponderance of the evidence, Robinson was entitled to backpay. Over Werner's objection, the district court then directed the EEOC to submit additional evidence detailing the calculations for a prejudgment interest award, stating that the EEOC had not waived the right to collect such interest. The district court later awarded prejudgment interest in the amount of roughly $11,000. Finally, the district court concluded injunctive relief was appropriate given the finding of intentional discrimination. The injunction requires Werner to "keep a record" of any deaf truck driver applications with FMCSA exemptions and "report those records to the EEOC . . . no less frequently than every six months . . . for a period of three years." The district court noted that this injunction "will not harm Werner so long as Werner complies with federal law" and that "[t]he reports may even enable Werner to avoid future lawsuits by demonstrating its good faith efforts to comply with the ADA."

-5-

Werner then filed a renewed motion for judgment as a matter of law and also moved for a new trial, which the district court denied. First, Werner challenged the decision to grant the EEOC's motion for a directed verdict on causation. The district court stated that, contrary to Werner's assertions, Werner refused to hire Robinson "because he was deaf, not because of a collateral 'consequence' of his deafness." Because each reason for Robinson's non-hire "just describ[ed] his deafness with more words" rather than "identifying a 'consequence' of it," the EEOC was entitled to a directed verdict on causation. Werner next argued that several evidentiary rulings merited a new trial, specifically the decision to admit emails between Marsh and other recruiters demonstrating animus towards deaf applicants and the decision to exclude evidence of Robinson's post-training driving history. The district court stated that emails between Marsh and her subordinates were properly admitted because the evidence at trial demonstrated that Marsh was part of the decisionmaking process for Robinson's application and that she had a discriminatory animus towards deaf applicants. Moreover, Marsh was given the opportunity to testify to clarify these comments before the jury. Additionally, evidence of Robinson's subsequent job performance was properly excluded because that evidence "had little relevance to the safety of a deaf driver communicating with another person in the cab of a truck while training." Next, Werner reasserted its position that Robinson was not qualified for the truck driver position because it was not obligated to accept Robinson's FMCSA waiver based on safety concerns. The district court rejected this argument as Robinson was physically qualified under 49 C.F.R. § 391.41(a)(3)(ii) based on his FMCSA waiver and the EEOC presented evidence that the "simultaneous communication" element of the placement driver program was not an essential function of the job. Finally, Werner challenged the decision to submit the issue of punitive damages to the jury. The district court noted that the EEOC had supplied several evidentiary bases supporting the jury's finding of malicious or reckless indifference aside from Marsh's discriminatory emails, including Hamm's familiarity with anti-discrimination laws, Knapp's testimony discrediting Hamm's claim that she investigated possible accommodations, and Robinson's testimony describing his call with Marsh and Hamm. Werner now appeals.

## II.

Werner first challenges the district court's decision to enter a directed verdict on the issue of causation. "We review the grant of a motion for directed verdict *de novo*, applying the same standard used by the district court, which is Fed[eral ]R[ule of ]Civ[il ]P[rocedure] 50." Randall v. Federated Retail Holdings, Inc., 429 F.3d 784, 787 (8th Cir. 2005). Under this rule, "a judgment as a matter of law is appropriate 'if during a trial by jury a party has been heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Id. (quoting Fed. R. Civ. P. 50(a)(1)).

The ADA prohibits employers from discriminating against employees "on the basis of disability." 42 U.S.C. § 12112. "To establish a prima facie case under the ADA, [the EEOC] was required to show that [Robinson] was disabled 'within the meaning of the ADA, was qualified to perform the essential functions of [the] job, and suffered an adverse employment action because of his disability.'" See Knutson v. Schwan's Home Serv., Inc., 711 F.3d 911, 913 (8th Cir. 2013) (citation omitted). In almost all employment discrimination cases, a plaintiff relies on the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to establish an inference of discrimination for purposes of causation. See, e.g., Huber v. Westar Foods, Inc., 139 F.4th 615, 623 (8th Cir. 2025) (en banc); McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009); Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997). Here, however, there was direct evidence of discrimination, so the district court entered a partial directed verdict on the issue of causation. "Direct evidence of discrimination 'is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding . . . that an illegitimate criterion actually motivated" the adverse employment action.'" Othman v. City of Country Club Hills, 671 F.3d 672, 675 (8th Cir. 2012) (citations omitted). Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias." McCullough, 559 F.3d at 861.

Our review of the record confirms that there was no evidence from which a jury could conclude that Robinson was rejected for any reason aside from his deafness given the direct evidence of discrimination proffered by the EEOC. Vice President of Safety and Compliance Hamm ended Robinson's employment interview by stating, "No, I'm sorry, we can't hire you because of your deafness." Additionally, Werner stated in a sworn interrogatory that its "position [wa]s that a deaf student driver could not safely complete the over-the-road training portion of Werner's student driver program." This evidence alone clearly creates "a specific link between the [alleged] discriminatory animus and the challenged decision": Werner would not hire *any* deaf applicant, including Robinson. See Thomas, 111 F.3d at 66 (alteration in original) (citation omitted). Werner's theory of the case was that Robinson was not qualified for the truck driver position *because he was deaf*, and, as the district court noted, Werner provided no other reason as to why it did not hire Robinson. Because Werner "admit[ted] that the disability played a prominent part in the decision" and was "defend[ing] its decision on the ground that the plaintiff [wa]s not otherwise qualified for the position, with or without reasonable accommodation," the district court properly entered a directed verdict in favor of the EEOC on the issue of causation. See Davidson v. Am. Online, Inc., 337 F.3d 1179, 1189 (10th Cir. 2003) (citation omitted).

Werner disagrees with this conclusion, arguing that there is a distinction between not hiring Robinson *because* he was deaf and not hiring Robinson *as a consequence* of his deafness. But this case is different from those in which we have upheld an adverse employment action taken against an employee based on a consequence of his or her disability. See, e.g., Huber, 139 F.4th at 627 (collecting cases and affirming employer's termination of employee who it believed violated company attendance policy because of a diabetic episode); Harris v. Polk County, 103 F.3d 696, 697 (8th Cir. 1996) (upholding employer's refusal to rehire an employee because she had a criminal record when employee argued that her criminal record was caused by her since-resolved mental illness). Here, there is no meaningful difference between taking an adverse action "because of the job performance consequences of a disability . . . rather than the disability itself" because

-8-

all of the alleged "consequences" *describe* Robinson's disability. Cf. Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1219 n.3 (8th Cir. 1999). Werner argued below that it did not hire Robinson because he could not "safely engage in *contemporaneous communications* with his trainer while driving, without diverting his eyes from the road." R. Doc. 356, at 5 (emphasis added). But, as the district court noted, "that's just describing his deafness with more words, not identifying a 'consequence' of it." This case is unlike those in which an individual has a disability but is terminated for other performance deficiencies like a lack of motivation, poor attitude, or data entry errors. See, e.g., Mole, 165 F.3d at 1219 n.3; Huber, 2025 WL 1537926, at *8. Werner argued that it did not hire Robinson specifically because he was deaf and that *his deafness* made him unqualified for the position. While the issue of Robinson's qualifications was a question for the jury, Werner's reason for failing to hire him was not. Werner did not hire Robinson because he was deaf, and we therefore discern no error by the district court in entering a directed verdict on the issue of causation.

## III.

Werner next argues that the district court erred by granting summary judgment on its undue hardship and direct threat affirmative defenses. "This Court reviews the district court's grant of summary judgment de novo." Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 734 (8th Cir. 2009).

## A.

Werner first challenges the grant of summary judgment on its undue hardship defense. The ADA exempts employers from making a reasonable accommodation for an employee if the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). An "undue hardship" means "an action requiring significant difficulty or expense" in light of:

(i) the nature and cost of the accommodation needed . . . ;
(ii) the overall financial resources of the facility or facilities involved . . . or the impact otherwise of such accommodation upon the operation of the facility;
(iii) the overall financial resources of the covered entity; . . . ; and
(iv) the type of operation or operations of the covered entity, . . . ; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

Id. § 12111(10)(A)-(B). Once the plaintiff has demonstrated that a proposed accommodation is reasonable on its face "in the run of cases," the employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 402 (2002). Werner, however, produced virtually no evidence before the district court about how providing non-verbal cues would fundamentally alter its *business*, not just the training program, nor did it cite any financial burden it would incur by accommodating Robinson. Instead, Werner proffered the conclusory statement that any accommodation would fundamentally change the training program because a trainer could not provide "instantaneous" safety training. As the district court noted, it is unclear how nonverbal communication during training fundamentally alters the ability of a "trucking company" to "carr[y] goods in interstate commerce," Werner's primary purpose. Moreover, Werner simply did not meet its burden of establishing a genuine dispute regarding "a significant difficulty or expense," offering no economic evidence and instead arguing that *the EEOC* failed to offer an accommodation that Werner deemed safe. See 42 U.S.C. § 12111(10)(A). Cf. Gardea v. JBS USA, LLC, 915 F.3d 537, 542-43 (8th Cir. 2019) (upholding grant of summary judgment on undue hardship when proposed accommodation was "utterly impractical" and required the employer "to extensively change its practices and work environment"). But Werner had the burden to prove this affirmative defense; its failure to provide any evidence as to how the accommodation would affect its business as a whole is fatal to its challenge on appeal. Because Werner failed to demonstrate a genuine dispute of fact on its affirmative defense of undue hardship, the district court properly granted summary judgment in favor of the EEOC.

-10-

B.

Werner's challenge to the grant of summary judgment on its direct threat affirmative defense is likewise without merit. "A 'direct threat' is defined as 'a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.'" EEOC v. Wal-Mart Stores, Inc., 477 F.3d 561, 571 (8th Cir. 2007) (quoting 42 U.S.C. § 12111(3)). "The Supreme Court requires an individualized direct threat analysis that relies on the 'best current medical or other objective evidence' in order to 'protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear.'" Id. (citation omitted). "Specific factors to be considered include (1) the duration of risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm." Id.; 29 C.F.R. § 1630.2(r). The employer bears the burden of proof. Wal-Mart, 477 F.3d at 571.

Here, Werner failed to offer sufficient evidence in support of its direct threat defense. The only person who allegedly inquired into whether Robinson's disability constituted a direct threat was Hamm, but it is undisputed that she did not conduct the required "individualized direct threat analysis." See id. Hamm stated that she called relevant trucker associations and asked if they had research on road tests with hearing impaired individuals, but she has no notes from these calls, no record of any analysis, and no evidence of any discussion about Robinson *individually* in light of his prior training as a commercial driver. Even viewing the facts in the light most favorable to Werner, it is undisputed that Werner did not conduct the individualized analysis necessary to prove this affirmative defense: Hamm just made a few general calls to back up her "prejudice, stereotypes, [and] unfounded fear" of allowing a deaf individual to drive a Werner truck. See id. (citation omitted). As the district court stated, "Werner's assessment of . . . Robinson wasn't bespoke—it was off-the-rack." This one-size-fits-all approach is insufficient to create a genuine dispute of material fact as to Werner's direct threat defense, and we discern no error by the district court as to this issue.

-11-

IV.

Werner also challenges several evidentiary rulings on the basis of relevance and prejudice. "We review the district court's evidentiary rulings . . . for clear and prejudicial abuse of discretion." Coterel v. Dorel Juv. Grp., Inc., 827 F.3d 804, 807 (8th Cir. 2016). "We will not disturb the jury's verdict unless . . . 'the error[s] prejudicially influenced the outcome of the trial.'" Id. (second alteration in original) (citation omitted). Relevant evidence is that which tends to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. "Unfair prejudice means an undue tendency to suggest decision on an improper basis, including evidence which is so inflammatory on its face as to divert the jury's attention from the material issues in the trial." United States v. Richardson, 40 F.4th 858, 867 (8th Cir. 2022) (citation omitted).

A.

Werner first argues that the district court abused its discretion by admitting "stray remarks by non-decisionmakers" that occurred two years after the decision was made to reject Robinson. Werner claims that these discriminatory comments made by members of the recruiting department, including recruiting manager Marsh, were irrelevant and that the evidence was unfairly prejudicial. See Arraleh v. County of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006) (distinguishing between "stray remarks in the workplace" and comments demonstrating discriminatory animus).

The comments in question were made to Marsh, who was a manager of student and driver recruiting at the time, by members of Werner's recruiting department. The EEOC introduced several emails after Marsh claimed not to know anybody at Werner who had ever discriminated against deaf drivers. On one occasion, a Werner employee sent Marsh a link to an article detailing how a deaf man obtained a truck driving job, to which Marsh responded, "This scares me to death." In another

instance, Marsh was communicating with another recruiting manager, Jen Williams, at work via instant messaging. Williams told Marsh, "[I]'m on hold with a deaf guy.. wtf," and proceeded to make several comments regarding this deaf applicant, including, "[others] must be trying to find him.. you know yelling his name.. but he can't hear them" and "marco . . . nobody can here [sic] polo" to which Marsh responded, "lmao . . . omg."

While "stray remarks, standing alone, may not give rise to an inference of discrimination, such remarks are not irrelevant." Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 922 (8th Cir. 2000). Such comments are especially relevant here, where Werner *admitted* it did not hire Robinson because of his disability and the EEOC sought to prove Werner was motivated by animus, not safety, in failing to hire Robinson. Additionally, the EEOC produced *other* evidence which, together with these comments, would allow the jury to find that Werner intentionally discriminated against Robinson for purposes of punitive damages. See id. at 923 (noting that these types of discriminatory comments "constitute circumstantial evidence that, when considered together with other evidence," may allow a jury to infer intentional discrimination). Finally, the EEOC was not using the comments to prove pretext sufficient to satisfy the McDonnell Douglas framework; the EEOC had direct evidence of discrimination, and these comments were not utilized to raise an inference of discrimination "standing alone." See Bevan v. Honeywell, Inc., 118 F.3d 603, 610 (8th Cir. 1997). While the emails were circulated two years after Robinson's rejection, Marsh held the same position she held at the time of Robinson's application, and, as the district court stated, these discriminatory comments were directly relevant to Werner's longstanding "decision[]making [and] attitude" towards deaf applicants. These comments provided "additional threads of evidence" for the jury that were directly relevant to animus. See id. (citation omitted).

Werner also argues that, even if the comments were relevant, they still should have been excluded because their probative value was substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. But "[d]amaging evidence is

-13-

always prejudicial; the question is whether the evidence is *unfairly* prejudicial." United States v. Tyerman, 701 F.3d 552, 563 (8th Cir. 2012). We discern no abuse of discretion here, as "the district court [wa]s in a better position than we to . . . make the subtle balancing required by [Rule] 403." Hogan v. Am. Tel. & Tel. Co., 812 F.2d 409, 411 n.2 (8th Cir. 1987) (per curiam). Not only was the evidence not unfair on its own, the district court also allowed Marsh to testify about these comments and attempt to clarify to the jury that the comments did not reflect Werner's values, and her testimony offset any potential unfairness. The district court "is given a great deal of discretion" when ruling on Rule 403 challenges, and we find no prejudicial abuse of discretion on this basis. See United States v. Witschner, 624 F.2d 840, 846 (8th Cir. 1980).

B.

Werner next claims that the district court abused its discretion by admitting evidence of other trucking companies' accommodations for deaf drivers. It claims that other companies' policies were irrelevant to Werner's refusal to train deaf drivers as "Werner is not bound by the safety decisions of other companies." Werner points to a Seventh Circuit case for the proposition that it "is entitled to determine how much risk is too great for it to be willing to take" when rejecting applicants. See EEOC v. Schneider Nat., Inc., 481 F.3d 507, 510 (7th Cir. 2007) (emphasis omitted). But the EEOC was not utilizing this evidence to prove that Werner *had* to adopt the same accommodations as other companies, the EEOC was using this evidence merely to prove that Werner *could* do so and refused. Moreover, the cited statement in Schneider was made in the context of applying a standard that has since been abrogated and analyzed whether a company was liable for regarding an employee as disabled based on its mistaken belief. Id. at 509 (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489-91(1999)), abrogated by ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(a)(4), 122 Stat. 3553 (2008)). The evidence of other companies' policies and their ability to train deaf drivers safely was directly relevant to whether Robinson's proposed accommodation was reasonable. The district court did not abuse its discretion by admitting this evidence.

## C.

Finally, Werner argues that the district court abused its discretion by excluding evidence under Federal Rule of Evidence 403 of Robinson's subsequent driving record while he was employed by other trucking companies. As the EEOC correctly points out, all of Werner's arguments on appeal rely on "the same prejudicial assumption[s]" the district court sought to keep from the jury: "that any subsequent accidents were due to Robinson's [lack of] verbal training—i.e., his being deaf." The issue at trial was whether Robinson's training without verbal cues was a reasonable accommodation; his subsequent accident history while driving alone was not relevant to this issue, as the district court properly recognized. Werner's own evidence proved that Robinson's post-training history had no bearing on the analysis, as Werner admitted at trial that it employed *experienced* deaf drivers who did not need its training. Moreover, "[i]n determining whether proffered evidence is misleading or confusing, the [district] court is given a great deal of discretion." Witschner, 624 F.2d at 846. We find no abuse of discretion here, as the district court clearly and adequately explained that any probative value of the evidence was outweighed by the risk of confusing the issues, undue delay, and wasting time. See United States v. Condon, 720 F.3d 748, 756-57 (8th Cir. 2013) (affirming district court when it adequately considered and explained its concerns in excluding evidence under 403). Additionally, the district court allowed Werner to inquire on cross examination about any training accidents on Robinson's record, further demonstrating the careful consideration it gave to the balancing analysis. The district court therefore did not abuse its discretion by excluding direct evidence of Robinson's subsequent driving record.

## V.

Werner also argues that the district court erred by denying its motion for judgment as a matter of law, arguing that there was insufficient evidence for the jury to conclude that Robinson was qualified for the truck driver position or that Werner acted with malice or reckless indifference towards Robinson. "We review these

-15-

sufficiency claims de novo using the same standards as the district court, that is, 'the evidence is viewed in the light most favorable to the prevailing party and the court [cannot] weigh or evaluate the evidence or consider questions of credibility.'" Townsend v. Bayer Corp., 774 F.3d 446, 456 (8th Cir. 2014) (citation omitted).

A.

Werner argues that the district court erred in submitting the EEOC's discrimination claims to the jury because Robinson was not qualified for the truck driver position as a matter of law. Federal regulations state that a person is physically qualified to drive a commercial motor vehicle if that person satisfies specific hearing requirements. See 49 C.F.R. § 391.41(b)(11). However, this chapter also provides that a person is physically qualified to drive said vehicle if "[t]hat person meets the physical qualification standards" or "obtained from FMCSA a medical variance from the physical qualification standards in [§ 391.41(b)]." Id. § 391.41(a)(3)(i)-(ii). It is undisputed that Robinson had the requisite waiver from FMCSA when he applied for the position with Werner. Werner claims that, despite Robinson's qualification, it was not required to accept the FMCSA waiver under Albertson's, Inc. v. Kirkingburg, 527 U.S. 555 (1999).

In Kirkingburg, the Supreme Court held that an individual was not qualified to drive a vehicle despite his procurement of an *experimental* waiver for his disability based on his weak vision. Id. at 577-78. Importantly, the waiver at issue "did not purport to modify the substantive content of the general . . . regulation in any way" and was not contained in the Code of Federal Regulations at the time. Id. at 576. The vision waiver "was simply an experiment with safety . . . resting on a hypothesis whose confirmation or refutation in practice would provide a factual basis for reconsidering the existing standards" in § 391.41(b). Id. Because the waiver was not mentioned in the federal regulations and did not carry the force of law, "[n]othing in the waiver regulation . . . required an employer of commercial drivers to accept the hypothesis and participate in the Government's experiment" by hiring legally

-16-

deficient individuals. Id. at 577. Thus, the Kirkingburg employee's claim failed because the employee was not qualified for the position.

These regulations have now been amended, however, and the waiver programs that modify commercial driver's licenses are contained in 49 C.F.R. § 391.41(a), carrying the full force of law. The program is no longer "experimental," and a person is physically qualified to drive if they either (1) have the requisite hearing as dictated by federal standards or (2) are deemed a safe driver despite the lack of hearing by obtaining a waiver from the FMCSA. See id. § 391.41(a)(3)(i)-(ii). As the district court correctly stated:

> Werner isn't opting out of an experimental program waiving federal safety regulations, as in [Kirkingburg]. Rather, Werner is trying to opt out of an established program operating *within* federal safety regulations. If Werner wants to challenge the wisdom of the current federal regulatory regime, there are procedures for that. But the regulations as they stand provide Werner with no safe harbor for disability discrimination.

Werner's claim that Robinson was unqualified as a matter of law fails, as Robinson possessed a valid hearing waiver at the time he applied for the truck driver position, making him physically qualified under 49 C.F.R. § 391.41(a)(3).

Werner next claims that there is insufficient evidence that Robinson was physically qualified as a matter of law because eliminating the essential function of contemporaneous communication with the trainer during driver training is not a reasonable accommodation. Werner's "essential function" argument fails because "[t]he essential function requirement focuses on the desired result,"—here, safe driving—"rather than the means of accomplishing it." See Skerski v. Time Warner Cable Co., 257 F.3d 273, 280 (3d Cir. 2001) (citation omitted). Werner's citation to Higgins v. Union Pacific Railroad Co., 931 F.3d 664, 671-72 (8th Cir. 2019) (citation omitted), is inapposite, as Robinson's accommodation allowed him to safely complete the job; the employee in Higgins asked for an accommodation that

-17-

"amount[ed] to an 'unlimited absentee policy,'" which has been long held to be unreasonable as a matter of law.

Here, Robinson's accommodation did not eliminate the essential function of safe driving, as the jury inherently found the accommodation safe by determining it was reasonable and finding in favor of Robinson. The jury heard from two EEOC experts on how it was safe to accommodate a deaf individual while training using hand signals, as diverting one's eyes from the road for a brief time was equivalent to the time spent checking a mirror or changing the radio. Several trucking companies testified that they used these types of accommodations safely in their own training programs. Robinson's own testimony supported the safety of using hand signals to communicate, as that was the accommodation he received while training to receive his CDL. Werner reviews the evidence in the light most favorable to *itself*, not the verdict, and, while Werner disagrees, we conclude that the evidence was sufficient to support the jury's finding that Robinson was qualified.

## B.

Werner also argues that the district court erred by submitting the issue of punitive damages to the jury "because there was no evidence of malice or reckless indifference to Robinson's federally protected rights." "In employment discrimination cases, punitive damages are appropriate when the 'complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 991 (8th Cir. 2007) (quoting 42 U.S.C. § 1981a(b)(1)). "To be liable for punitive damages, it is not sufficient that the employer simply knows that it is discriminating against an employee." Id. The employer must also know that "it may be acting in violation of federal law." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999).

Werner primarily relies on this Court's decision in Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894 (8th Cir. 2006), to support its argument that it did not act with malice and instead was focused on safety concerns. In Canny, this Court reversed a jury's punitive damages award when an employer did not accommodate an employee who had become blind, citing safety concerns under OSHA. Id. at 899, 903. We have since addressed this decision and explained that punitive damages were not warranted in Canny because "there was no evidence that the employer was aware that it may have been violating the ADA. On the contrary, the employer thought its actions were required by other federal regulations." EEOC v. Siouxland Oral Maxillofacial Surgery Assocs., LLP, 578 F.3d 921, 927 (8th Cir. 2009). Because the employer in Canny "reasonably perceived itself caught between federal regulations under [OSHA] and federal law under the ADA," it made only a "culpable, but not malicious or reckless, decision based upon safety concerns." 439 F.3d at 903.

Unlike the employer in Canny, Werner makes no argument that some other federal law required it to reject previously untrained deaf drivers. Werner argues that Marsh's unsavory emails between recruiters are not enough to support a finding of malice or reckless indifference, but that was not the only evidence supporting punitive damages. Robinson presented sufficient evidence of malice at trial, including: Marsh's discriminatory commentary with recruiters and her involvement with Robinson's application; Hamm's testimony about her familiarity with anti-discrimination laws, her alleged inquiry into accommodations, and her failure to record any information about this accommodation research; testimony from Knapp contradicting Hamm's testimony that she researched accommodations at all; and Robinson's testimony that Hamm told her he was not hiring him because he was deaf, despite his application being pre-approved. While Werner "offers one reasonable interpretation of the evidence presented at trial, . . . the jury evidently did not accept it." See Siouxland, 578 F.3d at 926. Like in Siouxland, Werner "points to no case in which [this Court] held that punitive damages were inappropriate as a matter of law where, as here, evidence was presented to the jury that a managerial employee engaged in discrimination while knowing that federal law prohibited such

discrimination." See id. Viewing the evidence in the light most favorable to the verdict, the district court did not err in submitting the issue of punitive damages to the jury.

## VI.

Finally, Werner challenges the district court's equitable awards of injunctive relief and prejudgment interest. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). Likewise, "[t]he decision whether to award prejudgment interest is within the district court's discretion and we will reverse that decision only for abuse of discretion." Smith v. World Ins. Co., 38 F.3d 1456, 1467 (8th Cir. 1994).

## A.

After it has been determined that an employer has "intentionally engaged in . . . an unlawful employment practice," the district court "may enjoin [the employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include . . . equitable relief." 42 U.S.C. § 2000e-5(g)(1). "District courts have broad discretion to issue an injunction once discrimination has been established." Briscoe v. Fred's Dollar Store, Inc., 24 F.3d 1026, 1028 (8th Cir. 1994). After a party demonstrates success on the merits of a discrimination claim, "the court must balance three factors to determine if injunctive relief is appropriate: (1) the threat of irreparable harm to the moving party, (2) the harm to be suffered by the nonmoving party if the court grants the injunction, and (3) the public interest at stake." Wedow v. City of Kansas City, 442 F.3d 661, 676 (8th Cir. 2006). While its discretion is broad, the district court should fashion an injunction no "broader than necessary to remedy the underlying wrong." EEOC v. HBE Corp., 135 F.3d 543, 557 (8th Cir. 1998).

The district court did not abuse its discretion by imposing injunctive relief. The injunction mandates that Werner report records of deaf applicants to the EEOC every six months (at a minimum) for three years and that it retain records regarding such applications. The district court noted that the requirements "will not harm Werner so long as Werner complies with federal law" by not blatantly discriminating against deaf applicants. It also found that these requirements may "enable Werner to avoid future lawsuits by demonstrating its good faith efforts to comply with the ADA." Given Werner's intentional discrimination, lack of good faith, and previous lack of record-keeping for deaf applicants, the injunction serves the public by requiring Werner to report deaf applicants directly rather than allowing Werner to wait until a victim of discrimination approaches the EEOC. Especially in light of the cap on damages, which reduced the jury award by more than 99%, the injunction might actually deter Werner from future discrimination. In short, the harm to Werner is outweighed by the public interest in eliminating discrimination and the threat of irreparable harm to deaf applicants, and we find no abuse of discretion by the district court on this basis.

## B.

As for prejudgment interest, Werner's only argument on appeal is that the EEOC waived the issue by failing to raise it before trial. An award of prejudgment interest is appropriate "when the damage award does not otherwise make the plaintiff whole." Smith, 38 F.3d at 1467. This award is authorized by Federal Rule of Civil Procedure 54(c), which gives the district court broad authority to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Prejudgment interest therefore constitutes "equitable relief," an award of which "make[s people] whole for injuries suffered on account of unlawful employment discrimination" in accordance with the "clear purpose" of Title VII. Winbush v. Iowa By Glenwood State Hosp., 66 F.3d 1471, 1483 (8th Cir. 1995) (citation omitted).

Additionally, an award of prejudgment interest is permissible despite its lack of inclusion in a pretrial brief because "the finding of liability [at trial] placed the defendants on notice that they would ultimately face monetary damages," including interest. Id. This Court has previously allowed a party to request prejudgment interest for the first time posttrial because the award is equitable, accounting for "compensation for the inability to use the money between the time of the compensable injury and the time that the award is paid." See Leonard v. Sw. Bell Corp. Disability Income Plan, 408 F.3d 528, 533 (8th Cir. 2005). Other Circuits also allow an award of prejudgment interest even if it was not requested in a pretrial brief. See, e.g., Rathborne Land Co. v. Ascent Energy, Inc., 610 F.3d 249, 262 (5th Cir. 2010) (declining to rule that a "failure to specifically request pre[]judgment damages . . . pre[]trial . . . bars a judge from awarding them in his final judgment" because such a ruling "would undermine" Rule 54(c)); RK Co. v. See, 622 F.3d 846, 853 (7th Cir. 2010) ("[A] failure to request prejudgment interest . . . pretrial . . . does not result in a waiver."); Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd., 90 F. App'x 543, 547 (Fed. Cir. 2004) ("[W]hether or not [the prevailing party] had specifically requested it, the district court could grant the proper relief, including prejudgment interest . . . ."). Werner's argument that the EEOC waived prejudgment interest by failing to request it in the pretrial brief is therefore without merit. The district court adequately granted the EEOC the relief to which it was entitled, even though it "ha[d] not demanded that relief in its pleadings." See Fed. R. Civ. P. 54(c). The district court did not abuse its discretion by awarding prejudgment interest.[3]

VII.

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[3]We decline to address Werner's request for an advisory opinion regarding the jury instructions pertaining to the failure-to-accommodate claim, as Werner does not seek reversal on this basis.